# IN RE MARSHUTZ.

PATENTS ; ANTICIPATION ; APPEALABLE ORDERS ; PATENT
PRACTICE.

1. To ascertain whether an invention is anticipated by a previous
   patent, it is not necessary to find that the same structure or
   component parts are used, but whether the given effect is pro-
   duced substantially by the same mode of operation and the
   same combination of means in both devices.
2. Marshutz's invention of an alleged improvement in spectacles or
   spectacle-frames *held* to be anticipated by Bussey's patent
   No. 538,151, upon the ground that it simply carried forward
   Bussey's idea by an improvement of form.
3. Rulings on questions of mere practice in the Patent Office, such as
   refusing to remand a case to the primary examiner for the
   purpose of receiving and considering new or modified claims,
   will not be reviewed in this court, unless it appears that there
   has been an abuse of discretion, and that substantial rights have
   been thereby affected or denied.

Patent Appeals. No. 98. Submitted May 11, 1898. Decided October 3, 1898.

HEARING on an appeal from a decision of the Commis-
sioner of Patents rejecting an application for a patent.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. William W. Dodge* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Chief Justice ALVEY delivered the opinion of the
Court:

This is an appeal from a decision made in the Patent
Office, whereby a patent was refused to the appellant, Sieg-
fried G. Marshutz, upon a claim by him for an alleged in-
vention of a new and useful improvement, not known or
used by others, in spectacles or spectacle-frames. The ap-

plication to the office was filed December 12, 1895, and the application appears to have been rejected, upon reference to a patent, No. 538,151, previously issued to one Bussey, dated April 23, 1895, and which was held by all the several tribunals of the Patent Office to be a full and complete anticipation of the claims of the appellant.

The claims insisted upon by the appellant are two, though they present substantially one and the same device.

The claims as formulated are as follows:

"1. A pair of spectacles having the free ends of its temples each provided with a cone-shaped retainer arranged to fit behind the ear at the rear of the saddle thereof, and to wedge between the external ear and the head, the retainer' being adapted and arranged to hold the free end of the temple entirely from contact with the ear and the head.

"2. A spectacle-frame, the free ends of the temples of which are bent downward and respectively provided below the bend with a downwardly-enlarging wedge-shaped retainer to fit behind the external ear and between it and the head, the retainer being adapted and arranged to prevent the free end of the temple from engaging with the ear, or with the head."

As just stated, all the officials in the Patent Office, passing upon the patentability of these claims, held that such claims had been in all respects substantially and effectually covered and anticipated by the prior invention of Bussey, embraced in the patent of April 23, 1895; but the appellant insists that there was error in so ruling, and he alleges the following as errors upon which he bases this appeal:

1st. That the Commissioner erred in affirming the decision of the board of examiners-in-chief.

2d. That the Commissioner erred in not finding patentable invention and novelty in the claims of the appellant; and,

3d. That the Commissioner erred in not remanding the case to the primary examiner for consideration of modified

claims proposed at the hearing of the appeal taken to him.

As the principal question in the case is whether the invention of the appellant is substantially and effectually covered and anticipated by the patent issued to Bussey, it is important to see for what that patent really issued, and thus ascertain whether it embraces substantially the claims of the appellant. And to determine this question, it is not necessary to find that the same structure or component parts are used in the two alleged improvements, but whether the given effect is produced substantially by the same mode of operation and the same combination of means in both devices. Mere colorable differences or slight improvements can not overcome or conflict with the right of the original inventor who holds a patent for his invention (*Ordiorne* v. *Winkley*, 2 Galls. 54); for, as said by the Supreme Court, in the case of *Pearce* v. *Mulford*, 102 U. S. 112, " all improvement is not invention, and entitled to protection as such. To entitle an improvement to protection, under the patent laws, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates."

In the specification forming part of the Letters Patent No. 538,151, issued to Bussey, it is stated :

"My invention relates to an improvement in attachments for spectacle-frames, the same being specially designed for use in connection with that class of frames which are adapted to encircle or embrace a portion of the ear. While it is true that this particular design of frame is universally used, it is nevertheless found objectionable, by reason of its tendency to cut, bruise, and otherwise injure the ears. My present invention is specially designed to overcome these objections, and consists in means for elevating that portion of the frames encircling or embracing the ears, thereby relieving the ears from pain and preventing other injuries thereto.

"A further object is to hold the spectacles in place and not allow them to careen or slip down on the nose from the right focal distance from the eye, thus preventing injury to it and increasing the power of the glasses by properly focalizing the light in the eye.

" With this end in view my invention consists in certain novel features of construction and combination of parts, as will be hereinafter more fully described, and pointed out in the claim."

The specifications are accompanied with illustrative drawings of the invention and its application, consisting of five figures or diagrams.

In further specification and explanation of the invention Bussey says:

" The attachments are placed in their operative position on the spectacle-frames by first introducing the free ends of the frames into holes *b* and by steadily pushing on said frames the free ends thereof will be forced through the passage-way formed by the abutting edges of corks *c*, and finally through holes *b* on the opposite ends of said attachments, *after which the attachments can be adjusted to suit the convenience of the wearer, and when so adjusted, they will be retained against accidental displacement by reason of the yielding frictional action of corks or other elastic material c.* When the attachments are being introduced on the frames of a pair of spectacles, the corks *c* or other elastic material will give sufficiently to allow of a free passage of the frames, and when the ends of the latter have passed entirely through the attachments the corks or equivalent material will grasp the sides of the frames sufficiently to retain the attachments against accidental displacement. . . .

"These attachments *can be of various shapes and sizes* to conform to the external ear between the helix and head, to so fit that space as to secure the greatest comfort, and to make them *round, oval and cone shape at both ends* to secure

ornamental effect, without departing from the object of the invention."

He then says:

"I would have it understood that I do not restrict myself to the particular construction and arrangement of parts shown and described. But having fully described my invention, what I claim as new, and desire to secure by Letters Patent, is—

"As an article of manufacture, an attachment for spectacles composed in the main of soft yielding material having a hole therein, extending longitudinally from one end to the other, said hole being small at the center and enlarged at the ends, whereby to readily receive the spectacle-bow and yieldingly grip it at the center of its length whereby it is held in position by its frictional contact with the bow, *substantially as set forth.*"

It is clear there is no invention in the simple cone-shaped knobs used by the appellant as retainers on the free ends of the spectacle-frame. But he claims that the invention consists in placing a *fixed retainer* upon the ends of the temple-pieces of the frame, the retainer being of such form that it fits between the upper part of the ear and the side of the head; whereas, as it is alleged by the appellant, the invention of Bussey "consists in means for elevating that portion of the frame encircling or embracing the ears, thereby relieving the ears from pain, and preventing other injuries thereto;" when, in fact, as it is insisted by the appellant, "the means so used in the Bussey patent do not assist in retaining the spectacles in place, and the use of the hooked ends of the frames can not be dispensed with."

But this is not all of Bussey's invention embraced in his patent. It is true, the attachments or retainers placed on the temple-pieces in the Bussey patent are not fixed at the ends of such pieces, and are apparently intended to rest on the upper part of the ear; but those attachments or retainers may be slid or adjusted to the free ends of the temple-

pieces, and they may be of cone shape, or any other shape
desired, and thus made to perform the purpose or function
designed to be performed by the fixed retainers of the ap-
pellant, in a way, at least, substantially similar to that
effected by the appellant's device.   It is manifest, from the
specification of the claims of the appellant, and also from
his communications with the Patent Office in regard to his
application, that he was not only familiar with the previous
invention of Bussey, but that there was a studied effort to
differentiate his claim from that contained in Bussey's pat-
ent, and it is very apparent that the difference is more in
mere color and form than in real substance.   In his speci-
fication, after referring to the manner the wearers of spec-
tacles suffer from the want of some contrivance for the
relief of the pressure of the temple-pieces on the ear, and to
afford a steady retention of the spectacles on the nose, the
appellant states (referring manifestly to the Bussey patent)
that "it has been proposed to remedy this by arranging a
*rectangular or other shaped support* upon the straight portion
of the spectacle-temples, and adapted to rest upon the sad-
dle of the external ear, thus to elevate the curved portion of
the temple from the ear and prevent thereby the objection-
able feature mentioned.   This remedy," says the appellant,
"is only partial at best, and in most instances will aggra-
vate instead of overcoming the objectionable features it is
designed to remove; the block resting upon the saddle of
the ear in plain view is highly unsightly; furthermore, it
can offer no resistance to the removal of the spectacles ex-
cepting the resistance afforded by the friction between the
block, the ear, and the head.   This is inconsiderable, and
hence the spectacles must be retained in place by the same
old means; *i. e.,* by the contact of the temples with the back
of the ears."

This is simply the depreciation of the merit of a rival in-
vention in order to enhance and recommend the supposed
superiority of one's own invention.   But the statement is

not in all respects fair. As we have seen, the device of Bussey is susceptible of a shape and an adjustment that substantially meet the requirement that is intended to be met by the device of the appellant. With the invention of Bussey in mind, the device of the appellant would appear to be simply the carrying forward of the same general idea as that embodied in Bussey's invention, with some modification and, it may be, improvement of form and appliance. But it is well settled that such advancement and improvement on a prior invention is not the subject of a patent. It has been expressly held by the Supreme Court, that a mere carrying forward of an original conception patented,—a new and more extended application of it involving change only of form, proportions, or degree,—the substitution of equivalents doing the same thing as did the original invention by substantially the same means with better effects,—is not such invention as will sustain a patent. It is only the invention of what is new and of practical utility, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property and which it secures by patent. *Smith* v. *Nichols*, 21 Wall. 112, 119.

It is certainly not the design of the patent laws that they should apply to and cover every improvement made, or device or modification applied, in the multitude of articles of daily use, however simple or inconsiderable in their nature. Some things, though of practical use and value, must be taken to be within the sphere of ordinary mechanical skill, and therefore not the subject of patent rights. As was well said by the Supreme Court in the case of *The Atlantic Works* v. *Brady*, 107 U. S. 200:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every

trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax npon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The consequences thus portrayed may not all result in a case like the present, but the principle is equally applicable. See, also, the case of *McClain* v. *Ortmayer*, 141 U. S. 419, 427.

Upon careful comparison of the respective claims and specifications of Bussey and the appellant we can discover no such substantial difference in the claims of the two as will justify a patent on the claims of the appellant. There is no patentable difference in the claims of the appellant as distinguished from the invention previously patented to Bussey, and this was the opinion and ruling of all the tribunals of the Patent Office, and we think their rulings were correct.

It may be thought that, as there is an apparent structural difference in the claims of the parties, a patent should be allowed to issue on the claims of the appellant, as no great harm could be done by such course. But the law forbids any such course as that. When a party applies to the Patent Office for a patent to secure to himself a monopoly in the use and profits of an alleged invention, it is incumbent upon him to show clearly and beyond reasonable doubt that he is entitled to such patent. The Office has no right, except where the right of the applicant is clearly shown, to

create a necessity, or make it incumbent upon a prior inventor and patentee to go into court to vindicate his patent as against a subsequent patentee for substantially the same invention. Nor should a party be clothed with power to exact royalty of the public for the use of an invention to which he is not clearly entitled.

The last assignment of error is, that the Commissioner erred in not remanding the case to the primary examiner for consideration of modified claims proposed at the hearing of the appeal before him. But this assignment of error presents no question that is open for consideration on his appeal. It was a question of official practice, interlocutory in its nature, and rested in the discretion of the Commissioner. The rulings on questions of mere practice in the Patent Office will not be reviewed in this court, unless it appear that there has been an abuse in the exercise of discretion, and that substantial rights have been thereby affected or denied. *Westinghouse* v. *Duncan*, 2 App. D. C. 131; *In re Neill*, 11 App. D. C. 584. The practice of refusing to remand a case to the primary examiner for the purpose of receiving and considering new or modified claims after the case has been fully heard by all the tribunals of the Patent Office, seems to be fully settled by repeated decisions of the Commissioner. *Ex parte Snow*, 80 O. G. 1270; *Ex parte Hunter*, 81 O. G. 504; *Ex parte Opdyke*, 50 O. G. 1293.

It follows that the rulings appealed from must be affirmed, and it is so ordered, and the decision and proceedings of this court on said appeal are directed to be certified to the Commissioner of Patents to be entered of record, etc.

*Rulings affirmed.*