HAYES INDUSTRIES, Inc., William H. Maxson, Plaintiffs,

v.

Robert E. WATSON, Commissioner of Patents, Defendant.

Civ. A. No. 4330–53.

United States District Court
District of Columbia.

Dec. 20, 1955.

Townsend F. Beaman, Jackson, Mich., Lloyd W. Patch, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., H. S. Miller, Washington, D. C., for defendant.

LAWS, Chief Judge.

On August 24, 1950, plaintiff William H. Maxson filed application in the Unit-

ed States Patent Office for a patent, entitled "Locking Ring for Threaded Heads for Warp Beams". The Primary Examiner at the Patent Office rejected the application and his decision was affirmed by the United States Patent Office Board of Appeals. Thereupon William H. Maxson and Hayes Industries, Inc., to which his application had been assigned, filed suit in this Court, pursuant to the provisions of Title 35, United States Code, § 145, for an adjudication that the patent should be granted.

Defendant, Commissioner of Patents, refers to several patents previously granted to others which he contends bar plaintiffs' right to a patent. Defendant relies particularly on the provision of Title 35, United States Code, § 103, which reads as follows:

> "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * * "

Among the references cited by defendant are patent No. 2,491,941 granted to Gustaf E. Utter December 20, 1940, and a French patent No. 800,546 granted to Ernest Schreiber, published July 7, 1936. However, defendant also relies upon the issuance of a British patent issued to Templewood Engineering Company Limited et al., No. 634,974, published March 29, 1950, as barring plaintiffs' claim. Plaintiffs concede that the device for which the British patent was granted accomplishes substantially the same results as plaintiffs' creation, but maintain the evidence adduced at the trial of this case establishes that the conception date of plaintiff Maxson's invention was March 19, 1950, before the British patent became a printed publication, and that since Maxson employed reasonable diligence in reduction to practice, the British patent may not be used to bar plaintiffs' claim. In reply, defendant contends that plaintiffs' evidence does not show conception by him before the publication date of the British patent; that granting the sketches relied on by plaintiffs (Exhibits 4A and 4B) were made on March 19, 1950, as claimed by plaintiffs, they did not reveal the invention claimed by plaintiff Maxson as it appears in his application for patent. Defendant further claims the evidence as to alleged conception by plaintiff Maxson is not corroborated, as required by law.

Since the decisions of both the Primary Examiner in the Patent Office and the United States Patent Office Board of Appeals rely principally on the Utter and the French patents as barring plaintiffs' claim and make no reference to the British patent, this Court will look first to the Utter and the French patents to determine whether in its opinion they control the disposition of plaintiffs' claim.

The Utter and French patents and plaintiffs' application relate to improvements in warp beams. The object of each is to provide an adjustable warp beam having means for rigidly clamping the flanges, or heads, in adjusted positions on the barrel of the beam. Warp threads used in weaving are wound upon a beam at the back of the loom. As the desired width of cloth changes, it becomes necessary to adjust the width of the warp. This is done by moving the heads along the barrel of the warp beam before the warp of the desired width is wound upon the barrel. When the textile material is wound upon the beam it builds up relatively great endwise pressures against the heads of the beams. Unless adequate provisions are made for securing these heads in their position of adjustment, end slippage will result as the endwise pressure increases with the winding of the beam.

The Utter patent discloses a locking device consisting of three pivoted levers supported upon pivot pins directly mounted in recesses in the structure of the beam head. Each lever has a hole

through which a screw is passed to engage a corresponding threaded hole in the beam head. Each lever has a threaded outer end which engages with the threads of the barrel of the beam. By tightening these screws or bolts, the levers are swung on their respective pivotal axes and exert both axial and radial force against the barrel of the beam. The action of this locking device anticipates the endwise pressure exerted by the textile material when wound upon the barrel, and thereby effects a constant distance between the heads during the winding operation.

The locking structure disclosed by the French patent consists of an internally threaded ring that is screwed on the barrel externally against the head. This exerts an axial force toward the center of the beam counteracting the endwise pressure created by the textile threads when wound upon the barrel. However, some materials apparently create such a great endwise pressure as to overcome the force exerted by the locking device and thereby varies the distance between the heads.

 Plaintiffs' application discloses a locking structure consisting of an internally threaded ring that is screwed on the threaded barrel into a recess in the head and is secured to the head by three screws that are passed through three spaced holes in the ring into three threaded holes in the head. The action of this locking structure achieves the same general result as that of the Utter patent. Also by using a threaded ring, such as is found in the French patent, plaintiff Maxson's structure reduces the high stress per unit area in the threaded

portion on the barrel. Thus plaintiff Maxson accomplishes an effective combination of the Utter and the French inventions and in so doing, unquestionably improves the accomplishments of each. But not only is improvement of itself not sufficient to warrant issuance of a patent [1], but the Court finds it is not able on the evidence before it to conclude that one having ordinary skill in the art would not find that the disclosures in the Utter and French patents suggested the results obtained by Maxson. This view seems to be enforced at least to some extent by the fact that the British patent, published about the same time as plaintiff Maxson's conception, discloses virtually the same accomplishments by another.

Plaintiffs concede that the basis for patentability is different in England from that which controls in the United States. In England, it is required only that the application for patent shall not be identically disclosed by an existing invention. Thus the fact that the British Patent Office granted a patent on the same disclosures as those of plaintiffs' application is not significant in this proceeding.

From what has been stated the Court is of opinion that plaintiffs, by reason of the references to the Utter and the French patents, have not sustained their burden of proof to establish a case for the granting of a patent. This makes it unnecessary to deal with the question of the priority of the British patent.

Judgment will be entered herewith dismissing the complaint, together with Findings of Fact and Conclusions of Law.

1. Minnesota Mining & Mfg. Co. v. Coe, 1938, 69 App.D.C. 256, 100 F.2d 429, certiorari denied 1939, 306 U.S. 662, 59 S.Ct. 788, 83 L.Ed. 1059, rehearing denied 1939, 307 U.S. 650, 59 S.Ct. 832, 83 L.Ed. 1529; In re Marshutz, 1898, 13 App.D.C. 228.