## HATCH and others *v.* MOFFITT.

*(Circuit Court, D. Massachusetts.  February 12, 1883.)*

1. PATENTS FOR INVENTIONS—REISSUE—INFRINGEMENT—"DISCLAIMER," ETC.

In reissued patents, compared with the original, there is not the same reason for indulgence in the use of vague language, because the reissue is taken after the working of the machine may be supposed to be understood, and broad claims are inserted for the very purpose of being construed broadly.

2. "MODE OF OPERATION."

In specifications for letters patent, where the invention falls within the category of machines, a claim not only for the mechanism but also for the mode of operation generally, is void.

3. SAME—DISCLAIMER.

Where, upon the purchase of a patent, the purchaser in a reissue of such patent disclaims a portion of the mechanism as insufficient to produce the desired result, *held,* that a third person has the right to improve such part of the machine by changing its internal form so as to effect a result which the purchaser of the patent, in his reissue, disclaims for it.

4. SAME.

It seems that the mere fact of showing a new article in the drawings of a patent for a machine will not of itself be an abandonment of the new article, which might properly be the subject of a new patent, until the statutory forfeiture of use for two years has been incurred.

5. ARTICLE MADE BY HAND.

It seems that an article made by hand in such a way that it might have been used separately from the larger thing to which it was attached, though there was no occasion to so use it, cannot be patented as a new manufacture. A slight variation of form is not sufficient to make a thing a new article of manufacture for which a patent may be obtained.

In Equity.

*Chauncey Smith* and *T. L. Wakefield,* for complainants.

*George Harding* and *W. A. Macleod,* for defendant.

LOWELL, J.  The plaintiffs own two reissued patents granted to Jesse W. Hatch.  The first, No. 6,319, is dated in 1875; the original being No. 117,627, dated in 1871.  This is for an improvement in apparatus for crimping the stiffenings of boots and shoes.  This reissue contains a broad claim (5) for a process, which is admitted to be void, unless it shall be construed to mean the machinery.  In several cases cited for the plaintiffs, the words "mode" and "process" have been thus construed, *ut res magis valeat.*  In a reissued patent, as compared with the original, there is not the same reason for indulgence in the use of vague language, because the reissue is taken after the working of the machine may be supposed to be understood, and broad claims are inserted for the very purpose of being construed broadly.  The claim in question is:

"In the process of forming heel-stiffeners, first impinging the heel-stiffener against the heel-form at the edge where the stiffener is to be bent, then forcing or wiping the stiffener from end to end, from its outer side over the edge, and converging towards the center of the heel-form, whereby the flange is turned and crimped, substantially as described."

This was not intended to claim merely the mechanism, but, at least, the mode of operation generally. This claim is void. *Brainard* v. *Cramme*, 22 O. G. 769. The third claim is:

" In a machine for crimping heel-stiffeners, a heel-form, a holder, a crimping apparatus, substantially as described, adapted to move in relation to each other, to turn the entire edge of the stiffener from the outside towards the center of the heel-form, substantially as described."

This claim may be held to be for the machinery. Claim 5 of the original is for the combination of the several parts to make up one machine. I understand the plaintiffs to contend that claim 3 of the reissue is substantially like 5 of the original, and that the defendant has infringed it. He is driven to this position by recent decisions. When his case was opened in July, 1880, his expert, in direct examination, mentioned only the process claim as the one infringed. I have little doubt that the reissue was very carefully drawn and purposely expanded; but I shall first compare the actual invention of Hatch with the actual invention of Moffitt, which is the most just and satisfactory mode, and afterwards consider the claims.

The original patent describes a "former," set on springs, and shaped like the heel of a boot or shoe, upon which the leather is to be placed; a clamp, consisting of a thin strip of metal, provided with toggle-arms, connecting with a treadle, by which the clamp is brought down and holds the leather to the former, with a yielding pressure, and crimping-jaws pivoted together at one end, which are then drawn down upon the leather, and at the same time move towards each other, so as to embrace the edges of the leather and crimp them into the desired form.

The defendant's machine is shown in a patent granted to him in 1876, and a working specimen is before me. It has a former of suitable shape, which is not set on springs and does not yield, and the clamping device does not yield, excepting upon about one-sixth of its surface, if at all. When the blank or partly shaped stiffener is placed on this former it is clamped by a block on each side, the two blocks forming a mould which have a positive and very decided unyielding pressure upon the blank, which is then acted on by an iron slide which has a recess shaped partly like a U, and partly like a V, and

is forced over the blank, but not very close to it; this is followed by a roller, which presses the edges of the blank still closer and more firmly into the required form. This roller is said to be necessary to the successful working of the machine as now constructed.

The theory of the plaintiffs is that the Hatch machine was the first which ever made a satisfactory counter, and that his claims should, therefore, be construed broadly. The fact, however, is that one Samuels invented a machine for making heel-stiffeners in 1857, which he used for 10 years, and which was used for several seasons by at least two manufacturers, in Lynn, and probably by five or six, doing good work on certain sizes and classes of counters, some of which were made of leather and some of leather board, though many were of less resilient material. This is abundantly proved by uncontradicted evidence. The plaintiff Jesse W. Hatch heard of this invention in 1873, and immediately bought it of Samuels for $200, and procured him to take out a patent for it, which the plaintiffs own. It is No. 145,017. This machine had a former, a clamp, and a slide, co-operating to do the work of crimping a heel-stiffener. The slide was rigid, and shaped like a U. Looking at the crimping mechanisms in controversy here as improvements upon Samuels, the plaintiffs cut the slide in two and pivot the parts at one end and crimp the leather by bringing these parts towards each other; and the defendant uses a rigid slide, which is advanced over the leather after the manner of Samuels, but by making his slide partly V-shaped instead of wholly like U, he rubs in the edges of the counter, with a mode of operation somewhat like that which the plaintiffs obtain with their closing jaws. Hatch, in his reissued patent, has a paragraph concerning the rigid U-shaped slide, which both parties understand to be a disclaimer of the Samuels machine, which Hatch then owned, though it does not, in terms, disclaim it, but only declares that it will not do satisfactory work, which is true if work of all sorts and sizes is meant, but not true of the small and light work which for years, was done upon it; and which Hatch cannot have supposed to be true when he bought the invention two years before the date of the reissue.

It appears to me that the defendant, Moffitt, had a right, notwithstanding the Hatch crimping jaws, to improve the Samuel rigid slide, and by combining it with a roller and changing its internal form somewhat, cause it to effect a result which Hatch in his reissue thinks the U slide will not effect; or, in other words, that Hatch, considering the state of the art, cannot claim the Moffitt slide as an equivalent for his crimping jaws.

Similar considerations govern the clamping apparatus. Hatch dwells much on the importance of having the clamp yield to the inequalities of the leather. The defendant's clamping apparatus is unyielding, excepting, perhaps, at the rear, which is but a small part of the surface, and it is so different from the elastic strap of Hatch that it cannot be considered a mere equivalent, when we remember that Samuels had an effective clamp which, in its operation, resembled the plaintiffs in being a mere clamp, and that the Moffitt blocks are moulds as well, and unyielding. I am of opinion, therefore, that no claim which represents the true invention of the complainants is infringed by the defendant, and more definitely that claim 3 of the original, and 5 of the reissue, properly construed, are not infringed.

The second patent is for heel-stiffeners, such as are made on the Hatch machine, as a new article of manufacture, granted July 16, 1872, and numbered 129,338, reissued April 20, 1875, No. 6,388. It is admitted that similar counters were made by hand, but only in the course of making the shoes in which they were to be used. It is further admitted that the counters are shown in the drawings of the machine patent dated August 1, 1871. I am much inclined to think that the mere fact that a new article is shown in the drawings of a patent for a machine would not of itself be an abandonment of the new article, which would properly be the subject of a different patent, until the statutory forfeiture of use for two years had been incurred.

I am further inclined to think that if an article has been made by hand in such a way that it might have been used separately from the larger thing to which it was joined, though there was no occasion so to use it, a patent cannot be taken out for that article as a new manufacture. See *Buzzell* v. *Fifield*, 7 FED. REP. 465.

My only doubt upon a third and wholly decisive point is that it has not been argued, and I well know that it is dangerous for a judge to be wiser than counsel in a case which has been carefully and thoroughly prepared, but it does seem to me entirely clear that Samuels and all those who used his machine made counters, from 1857 onwards, which come fully within the scope of the single claim of the original patent, namely: "As a new article of manufacture, a crimped heel-stiffener, in which the seat, *b*, is formed with a smooth surface, and the wrinkles are carried down to the inner margin without notching the leather." In the reissue the description is a little more particular, but I do not know that it is substantially different. Samuels made counters which served the purpose, and that is all that can be required in such an article as a heel-stiffener. Slight variations of

form, or superior smoothness, will not make such things new articles of manufacture if they are used in the same way and for the same purpose, and effect a like result in boots and shoes as the older forms.

Bill dismissed.