### EDISON v. AMERICAN MUTOSCOPE CO.

(Circuit Court, S. D. New York. July 15, 1901.)

1. PATENTS—AMENDMENT OF APPLICATION—INSERTING NEW CLAIMS.

The fact that the original application for a patent contained only claims for the method of producing an article does not preclude the applicant from introducing by amendment claims covering the apparatus by which such method is carried out, as well as the product, where both the apparatus and product are described in the specification and constitute a part of the actual invention; and a patent issued on the amended application is not invalid as to the apparatus and product because they were in public use and on sale more than two years before the amendment was filed.

2. SAME—ABANDONMENT.

Where an inventor has filed more than one application for a patent covering the same invention, his permitting one of such applications to lapse does not constitute an abandonment.

3. SAME—INFRINGEMENT—KINETOGRAPHIC CAMERA.

The Edison patent, No. 589,168, for a kinetographic camera, claims 1, 2, and 3, were not anticipated and are valid. Claim 5, which covers a tapelike photographic film having thereon a series of photographs of successive positions of an object in motion, is also valid, being for a thing previously unknown, and is not limited to the product of the particular apparatus described in the prior claims. All of said claims also *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

Richard N. Dyer, Frederick P. Fish, and S. O. Edmonds, for plaintiff.

Thomas B. Kerr and Parker W. Page, for defendant.

WHEELER, District Judge. This suit is brought upon letters patent No. 589,168, dated August 31, 1897, and granted to the plaintiff upon an application filed August 24, 1891, for a kinetographic camera. In the specification he says:

"The purpose I have in view is to produce pictures representing objects in motion throughout an extended period of time, which may be utilized to exhibit the scene including such moving objects in a perfect and natural manner by means of a suitable exhibiting apparatus. In carrying out my invention I employ an apparatus for effecting by photography a representation suitable for reproduction of a scene, including a moving object or objects comprising a means, such as a single camera, for intermittently projecting at such rapid rate as to result in persistence of vision images of successive positions of the object or objects in motion as observed from a fixed and single point of view, a sensitized tapelike film, and a means for so moving the film as to cause the successive images to be received thereon separately and in single-line sequence. The movements of the tape film may be continuous or intermittent, but the latter is preferable, and it is further preferable that the periods of rest of the film should be longer than the periods of movement. By taking the photographs at a rate sufficiently high as to result in persistence of vision, the developed photographs will, when brought successively into view by an exhibiting apparatus, reproduce the movements faithfully and naturally."

He then describes a camera in which the film is wound from one reel to another intermittently past the lens, between which and the film a disk perforated near the edges revolves, bringing the apertures between the lens and the film when the latter is at rest, and the solid part between them when it is in motion, producing successive exposures, by which photographs of moving subjects may be taken, at equal distances, in a line, upon the film, with great rapidity, up to 46 per second, which may be so reproduced in the same order as to present by the persistence of the eye an illusion of the subjects in such motion. The claims are for:

"(1) An apparatus for effecting by photography a representation, suitable for reproduction, of a scene including a moving object or objects, comprising a means for intermittently projecting at such rapid rate as to result in persistence of vision images of successive positions of the object or objects in motion, as observed from a fixed and single point of view, a sensitized tapelike film, and a means for so moving the film as to cause the successive images to be received thereon separately and in a single-line sequence.

"(2) An apparatus for taking photographs suitable for the exhibition of objects in motion, having in combination a single camera and means for passing a sensitized tape film at a high rate of speed across the lens of the camera, and for exposing successive portions of the film in rapid succession, substantially as set forth.

"(3) An apparatus for taking photographs suitable for the exhibition of objects in motion, having in combination a single camera and means for passing a sensitized tape film across the lens of the camera at a high rate of speed and with an intermittent motion, and for exposing successive portions of the film during the periods of rest, substantially as set forth."

"(5) An unbroken transparent or translucent tapelike photographic film, having thereon equidistant photographs of successive positions of an object in motion, all taken from the same point of view; such photographs being arranged in a continuous straight-line sequence, unlimited in number save by the length of the film, substantially as described."

The invention appears to have been made in the summer of 1889, and this is not disputed. The devices do not appear to have been in public use or on sale in any way prior to August 24th of that year, or two years before the application. But in the original application the claims were all for the method of producing successive photographs of moving objects in a line upon the film, and not for the means or the combination of means of this production, or for the product; and the claims for these devices were not made till 1896, when they were brought in by amendment. This amendment is said to be the real application for them. They had been in public use and on sale much more than two years prior to that time, and the right to a patent for them is claimed to have been thereby barred. The invention of the things, as well as of the method, was at all times, however, described in this application, and the amendment changing the claims to correspond with the different phases of the invention seems to have been well within the lawful power, discretion, and practice of the patent office. The application went by appeal from the rejection on references by the examiner to the examiners in chief. As to this they said:

"It was urged at the hearing that this application as originally presented contained only method claims, and that a patent granted thereon might be subject to attack, as being for a different statutory class of invention from that originally presented. But it is entirely clear that the invention as now claimed is precisely the same invention as that originally disclosed and claimed. The applicant has made a mistake in claiming the manner of use of his apparatus, instead of claiming the apparatus itself, and has an indubitable right to correct that error."

So this change of claims had the full approval of the patent office, and it was thereby made as valid as any action there could make it. An accompanying application, covering the same things, appears to have been permitted to lapse, by withdrawal from prosecuting it against opposition, from which an abandonment in law is claimed to have followed; but while there could be more than one application, either of which might result in a patent for the same thing, there could be but one patent for that thing, and all of those applications but one would have to be disposed of in some other way, and while this one remained there would not seem to be any abandonment in law for what that would cover. The examiners in chief stated the references, on which the claims appealed had been rejected, to have been M. Marey's phenakistoscope, described in an article reprinted in the Scientific American Supplement, June 10, 1882, entitled the "Photographic Gun"; the patent to Le Prince, No. 376,247, dated January 10, 1888; and an article by one Levison on "Amateur Photographers," in the Brooklyn Eagle of June 14, 1888. The phenakistoscope of M. Marey appears to have been considered an anticipation of the method, and the others, for reasons well founded and stated, not to have been anticipations of the devices, and new forms of the claims were suggested as allowable, which became those now in question. A great number of prior patents and publications, including those mentioned and a French patent and certificate of addition thereto to L. Ducos of 1864, have been set up in the answer, and learnedly described and compared with

the patent in suit in the evidence. After much discussion of all, the expert of the defendant appears to reach the conclusion that Le Prince, Marey, and Levison as nearly disclosed the invention of the first three claims, and Ducos in his certificate of addition as nearly that of the fifth claim, as any. Le Prince's devices appear to have been put into successful use to some extent, but that and all the others had such limitations and defects that the examiners in chief seem to have been well warranted in saying:

"This application thus presents the first complete disclosure of an apparatus by which can be produced a series of photographs on a continuous film, by the use of which a reproduction of an animate scene may be obtained."

The sensitized tapelike film is an element of the combination of each of these first three claims, and no combination without it could be the combination of either of them. It was not known, nor in existence, till about the time of this invention. This patentee did not invent it, but manufacturers produced it. Others are said to have been ready for it, but he was the first to use it in a practicable way in these combinations in any machine producing this result. All, including the defendant's expert, appear to agree that he made a contribution to this art, and that which he made appears to have been a last step that counted. That the illusion of moving pictures could be produced by rapidly taking images of subjects in motion, and rapidly exhibiting them in the same order, was well known and understood before this invention, and many contrivances had been made for accomplishing this result, but none of them had these devices operating together in the same way. He did not invent the lens, nor the camera, nor the sensitized tapelike film, nor instantaneous exposure, nor discover the persistence of the eye; but he appears to have invented means for taking the film before the lens at the right speed, and for making rapid exposure at the right times, for projecting the images upon the film at proper intervals for producing a line of successive images upon the film, ready for use by well-known means, by persistence of the eye, in exploiting the illusion. This compact machine, containing the new combinations of the mechanical means and parts of the first three claims, working together for the production of the images in their line and order upon the film, seems to be what his invention in this respect was. The product of this machine, covered by the fifth claim, seems also to have been different from that of Ducos' machine, or of any, and new as a manufacture, and patentable, as hard-rubber sets of teeth were, and sound records have been. None of the objections to these claims have, according to these views, been sustained, and they are therefore held to be valid.

In the defendant's camera such a film is carried intermittently past the lens, with such a perforated disk revolving between them, making successive exposures, by which photographs of objects in motion in a line upon the film are made with such rapidity that they may be so reproduced as, by the persistence of the eye, to give an illusion of the motion. The means are not the same as those of the patent, but they are equivalents in the combinations of the first three claims. The fifth claim is not in terms for the product of this

patented machine, as Cummings' set of teeth in Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952, was a product of that process, but for the film of the patent, with equidistant photographs of successive positions of an object in motion taken from the same point of view upon it, in continuous straight-line sequence and unlimited number, save by the length of the film, however produced. Such a film, with such a line of photographs upon it, had never been produced but by this apparatus, or existed, and so it was new; but the operation of the machine did not so inhere in it that it would not have been new if produced in any other way. The defendant's machine does not always produce such an equidistant series, but it sometimes does; and when it does, to that extent it would seem to be an infringement of this claim. In the plaintiff's machine this equal distance is produced between the negatives by toothed wheels working in punched holes in the edge of the film. In the defendant's machine holes are punched in the edge of the film at the same point in respect to each photograph, and the spaces between the positives are rectified by these holes. The claim is not limited to negatives, and these positives are within its terms; and the fact that they are equally spaced by an operation in arranging the negatives does not prevent or relieve the infringement. The defendant appears to have taken the substance of the invention covered by these claims, and the plaintiff, therefore, appears to be entitled to a decree.

Decree for plaintiff.