# CHICAGO FILM EXCHANGE v. MOTION PICTURE PATENTS COMPANY.

PATENTS; NOVELTY; MOTION-PICTURE FILMS.

1. A claim in a patent for an article of manufacture described as an unbroken transparent or translucent tape-like photographic film pro-

vided with perforated edges is unpatentable and void, where the film was neither discovered nor perfected by the patentee, and the perforations along the edges at regular intervals into which the teeth of ratchet wheels of a camera entered to give it the required motion constitute a well-known mechanical contrivance.

2. That a photographic film has thereon uniform sharply defined, equidistant photographs of successive positions of an object in motion as observed from a single point of view, at rapidly recurring intervals of time, arranged in a continuous straight-line sequence, unlimited in number save by the length of the film, and sufficient in number to represent the movements of the object throughout an extended period of time, which film when the negative strip is converted into a positive on being passed through an exhibiting machine will give a lifelike representation of the moving object,—will not render the film patentable as an object of manufacture; the particular character and arrangement of the pictures being nothing more than the operation of the camera machinery.

No. 2400.    Submitted October 11, 1912.    Decided December 2, 1912.

HEARING on appeal by the defendant from a decree of the Supreme Court of the District of Columbia in favor of plaintiff in a suit for alleged infringement of a patent granted to Thomas A. Edison for a moving picture film.                    *Reversed.*

The facts are stated in the opinion.

*Mr. William J. Wallace, Mr. William Houston Kenyon,* and *Mr. H. N. Low* for the appellant.

*Mr. Frederick P. Fish* and *Mr. Melville Church* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree on a bill by the Motion Pictures Patents Company, a corporation of the State of New Jersey, against Chicago Film Exchange, a corporation of the State of Illinois, doing business in the city of Washington, for the in-

fringement of a patent to Thomas A. Edison for a photographic film, declaring claim 2 of said patent valid, its infringement by the defendant, and granting an injunction against its further infringement, together with an order of reference to take an account of damages. The pleadings are in the usual form, and were not excepted to.

It appears that Thomas A. Edison on August 24, 1891, applied for a patent for a photographic camera and film and received the same, No. 589,168, on August 31, 1897. Claims 1, 2, 3, 4, of this were for the camera apparatus, and claims 5 and 6 covered the films used therein. Claims 5 and 6 read as follows:

"5. An unbroken transparent or translucent tape-like photographic film having thereon equidistant photographs of successive positions of an object in motion, all taken from the same point of view, such photographs being arranged in a continuous straight line sequence, unlimited in number save by the length of the film, substantially as described.

"6. An unbroken transparent or translucent tape-like photographic film provided with perforated edges and having thereon equidistant photographs of successive positions of an object in motion, all taken from the same point of view, such photographs being arranged in a continuous straight line sequence, unlimited in number save by the length of the film, substantially as described."

A suit was brought by the patentee in the United States circuit court for the southern district of New York, against the American Mutoscope Company, for the infringement of the said patent. From a decree sustaining the bill (110 Fed. 660), an appeal was taken to the circuit court of appeals for the second circuit, where the decree was reversed, and the bill dismissed. 52 C. C. A. 546, 114 Fed. 926.

The court found that Edison was not the first to devise a camera for taking negatives of objects in motion and at a rate sufficiently rapid to result in persistence of vision, but that the specific type of his apparatus was not disclosed in the prior art; that while Edison's predecessors were at work during the tran-

:sition period from plates to flexible paper, and from the paper to celluloid films, they nevertheless left no new principle to be ·discovered, and no essentially new form of machine to be invent·ed in order to make the latest improved photographic material available for the purpose; that Edison, by perfecting the first .apparatus for using this film, immediately met all the conditions necessary to commercial success; but that this did not entitle him to a monopoly of all camera apparatus for using the ·film. The conclusion was that, while he had made an invention, it was not the broad one of his apparatus claims. The fifth ·claim for the film, it was said, "is obviously an attempt by the patentee to obtain a monopoly of the product of the apparatus ·described in the patent, so that in the event it should turn out that his apparatus was not patentable, or the product could be ·made by apparatus not infringing his, he could nevertheless enjoy the exclusive right of making it."

Claim 6, which differed from claim 5 only by the insertion ·of the words, "provided with perforated edges," in describing the film, was not discussed.

Compelled to accept this decree as final by the denial of a writ of certiorari, Edison applied for a reissue dividing his application. The reissue patent for the apparatus, having four ·claims, was subsequently declared valid save as to claim 4. 81 ·C. C. A. 391, 151 Fed. 767. He also received a reissue No. 12,038, after some objections and amendments, with the two ·following claims:

"1. An unbroken transparent or translucent tape-like photo·graphic film having thereon uniform sharply defined photo·graphs of successive positions of an object in motion as observed ·from a single point of view at rapidly recurring intervals of time, such photographs being arranged in a continuous straightline sequence, unlimited in number save by the length of the ·film, and sufficient in number to represent the movements of the object throughout an extended period of time, substantially as ·described.

"2. An unbroken transparent or translucent tape-like photo·graphic film provided with perforated edges, and having there-

on uniform sharply defined photographs of successive positions of an object in motion as observed from a single point of view at rapidly recurring intervals of time, such photographs being arranged in a continuous straight-line sequence, unlimited in number save by the length of the film, and sufficient in number to represent the movements of the object throughout an extended period of time, substantially as described."

This patent was surrendered and a reissue applied for on December 17, 1903, the applicant stating that the word "equidistant," had been inadvertently omitted as defining and explaining the word "uniform" used in the description of the photographic film in the claims of the first reissue. Reissued patent No. 12,-192 was then obtained with the claims 1 and 2 as follows:

"1. An unbroken transparent or translucent tape-like photographic film having thereon uniform sharply-defined *equidistant* photographs of successive positions of an object in motion as observed from a single point of view at rapidly recurring intervals of time, such photographs being arranged in a continuous straight-line sequence, unlimited in number save by the length of the film, and sufficient in number to represent the movements of the object throughout an extended period of time substantially as described.

"2. An unbroken transparent or translucent tape-like photographic film provided with perforated edges, and having thereon uniform sharply defined equidistant photographs of successive positions of an object in motion as observed from a single point of view at rapidly recurring intervals of time, such photographs being arranged in a continuous straight-line sequence, unlimited in number save by the length of the film, and sufficient in number to represent the movements of the object throughout an extended period of time, substantially as described."

The only difference in these claims is that No. 2 contains the words, "provided with perforated edges," inserted after the word "film" in the second line.

Infringement of both claims was charged in this suit, but the

decree was founded on claim 2, which is the preferred one of the patent.

Following the language heretofore quoted relating to the attempt made through claim 5 of the original patent (hereinabove set out), it was said by the circuit court of appeals (52 C. C. A. 546, 114 Fed. 926):

"A claim for an article of manufacture is not invalid merely because the article is the product of a machine, whether the machine is patented or unpatented; but it is invalid unless the article is new in a patentable sense,—that is, unless its original conception or production involved invention as distinguished from ordinary mechanical skill. If it is new only in the sense that it embodies and represents superior workmanship, or is an improvement upon an old article in degree and excellence, within all authorities the claim is invalid. *Hatch* v. *Moffitt* (C. C.) 15 Fed. 252; *Wooster* v. *Calhoun,* 11 Blatchf. 215, Fed. Cas. No. 18,035; *Excelsior Needle Co.* v. *Union Needle Co.* 23 Blatchf. 147, 32 Fed. 221; *Smith* v. *Nichols,* 21 Wall. 112, 22 L. ed. 566; *Risdon Iron & Locomotive Works* v. *Medart,* 158 U. S. 79, 39 L. ed. 903, 15 Super. Ct. Rep. 745. * * * The film was not new, and if the other characteristics of the product are not new, or are new only in the sense that they add to the article, merely a superiority of finish or a greater accuracy of detail, the claim is destitute of patentable novelty."

The claims of the reissue are the result of an attempt to overcome the effect of that decision. Answering an objection in the office that there was no necessity for the complete description of the camera apparatus, the applicant said: "We also think it desirable that the complete apparatus should be described, because the differences which distinguish applicant's film from the prior films are largely due to the features of novelty in the apparatus." The following is extracted from the deposition of Thomas A. Edison taken in the case against the American Mutoscope Company and used in evidence in this case:

"175XQ. Why do you suppose you did not refer in any of your caveats to the character or composition of material of the

film which you used in any of the forms of apparatus for taking or reproducing photographs of an object in motion ?

"A. I don't know why I did not. I was not interested in the manufacturing or making of the photographic material.

"176XQ. Did you not regard the film then as a thing of your invention ?

"A. No. I did not regard the film as a part of my invention; no, sir; I looked to the people who made it for that.

"177XQ. You consider your invention to be in the apparatus which you had designed for producing the illusion of motion ?

"A. I was trying to do for the eye what the phonograph was doing for the ear, and to make it commercial.

"178XQ. After you had conceived of that idea, the selection of material was not a matter of invention, although it might have been difficult ?

"A. Well, I don't know about that. Our experiments showed that we had to have peculiar material, especially when we were on the microphotographs, as we could not get any definition with paper and things like that; we had to get some glassy surface. The microphotographs shown with microscopes are very nicely defined and even a hundred figures are shown under a microscope, and all the details come out sharp, but these are taken by some means that I don't know of, but taken at very low speed, and the surface seems to be perfect, whereas the only surface we could get was very warty and irregular, and we could not bring out any details whatever when the picture was extremely small. * * *

"183RE-D.Q. On cross-examination you referred to the requisites of the film for your 1889 apparatus as being toughness and transparency. Did you include the requisite for the surface, the sensitive surface of such a film ?

"A. No, I did not, but that was one of the things that we got the photograph people to work on to give us the maximum sensibility, because we were very short of light; and as we were taking photographs at a very rapid rate, we had to have something extremely sensitive, and they made us a special film, different from the film that we printed on, that is to say, different from

the positives; and this special film was made extremely sensitive so that the smallest amount of light would produce great results, and we, at first, did not get them very sensitive, but they by working on them, made them extremely sensitive, so that with the small amount of light we had, they were quite satisfactory after they had experimented on them."

W. K. L. Dickson, who was the principal assistant of Edison in perfecting his apparatus, as a witness for plaintiff said that, after constructing the apparatus, using the heavy thick celluloid material of Carbutt with the toothed edge for feeding, he interviewed George Eastman, of Rochester, who was working to produce long sheets of films for his spool camera, and told him of the great importance of producing such a film. After receiving a sample of this new film, witness showed it to Edison, who jumped out of his seat and said: "We have got it. Now work like ———." Later, longer strips of this film were procured from Eastman. Owing to some imperfections in the emulsion, the film did not give complete satisfaction and Eastman labored to overcome the defects, finally succeeding.

Passing by the discussion relating to the reissue and the limitations claimed to have been placed upon the claim by the proceedings in the Patent Office, we come to the question whether Edison was the inventor in the sense of the patent law of the article of manufacture described in claim 2 of reissue patent No. 12,192. "A manufacture is an entity distinct from the substances of which it is composed, and from the instruments or art by which it is produced." 1 Robinson, Patents, sec. 184. "Articles of manufacture may be new in the commercial sense, when they are not new in the sense of the patent law. New articles of commerce are not patentable as new manufactures, unless it appears in the given case that the production of the new article involved the exercise of invention or discovery beyond what was necessary to construct the apparatus for its manufacture or production. Nothing short of invention or discovery will support a patent for a manufacture any more than for an art, machine, or composition of matter." *Union Paper Collar Co.* v. *Van Dusen,* 23 Wall. 530–563, 23 L. ed. 128–133. "A

patentable invention is a mental result. It must be new and shown to be of patentable utility. Everything within the domain of the conception belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which preceded it, and be an improvement. In such case it is patentable. * * * But a mere carrying forward, or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent." *Smith* v. *Nichols,* 21 Wall. 112–118, 22 L. ed. 566, 567.

Sometimes improvements in a product, owing to skill of workmanship or the perfection of machinery, consist of superiority of finish, greater accuracy of detail, and result in increased commercial value, but they do not thereby become patentable. *Smith* v. *Nichols,* 21 Wall. 112–119, 22 L. ed. 566, 567; *Risdon Iron & Locomotive Works* v. *Medart,* 158 U. S. 68–81, 39 L. ed. 899–904, 15 Sup. Ct. Rep. 745; *Milligan & H. Glue Co.* v. *Upton,* 97 U. S. 3, 24 L. ed. 985. Applying those rules to the conditions of this case, we are of the opinion that plaintiff's assignor, Thomas A. Edison, is not the inventor of the film described in claim 2, and that his patent therefore is invalid. The flexible, transparent, or translucent tape-like film prepared for taking photographs, was neither discovered nor produced by Edison. It was improved and brought to its present state of perfection by Eastman. When exhibited to Edison he seized upon it as the thing needed to make his camera apparatus a complete commercial success. He provided it with perforations along the edges at regular intervals into which the teeth of ratchet wheels of the camera entered to give it the required motion; a mechanical contrivance to adapt it to the performance of the functions of the machine. This co-operation of the rows of holes with the teeth of moving wheels he had described in a caveat of 1889 as similar to that in the Wheatstone telegraph instrument, for insuring a positive motion of the band. Moreover, perforations

had been previously made in photographic films for feeding purposes.  See Reynand's French Patent.  So far, our conclusion is the same substantially as that of the circuit court of appeals in the decision before referred to in which claim 5 of the original patent and, incidentally, claim 6, were under consideration.

It is further contended that the film of the present patent claim has been invested with new and substantial qualities, by reason of the distinct, uniform, equidistant photographs taken of moving objects, which, when the negative strip is converted into a positive, can be passed in the same manner through the exhibiting machine and give a life-like representation of the moving objects, never before obtained.  In the course of their argument, counsel for plaintiff (appellee) say:  "In a word, the film produced by Mr. Edison and described minutely and with accuracy in his patent, represents a practical embodiment of all the elements necessary to complete and perfect practice of the motion-picture art as we know it to-day.  No detail seems to have escaped him; no problem growing out of the largest conception of the taking and exhibiting of photographs of moving objects in a life-like and natural manner seems to have baffled his solution.  In saying this we do not mean to say that Mr. Edison, in the patent in suit, foreclosed all further improvements in his camera and in his exhibiting machine, but we do say that this record fully proves that he did supply all of the fundamentals of the film that is used in the art as practised to-day."

We do not dissent from the proposition that Mr. Edison solved the problems of the motion-picture art with great ingenuity and skill, but the problems that he solved were in the camera apparatus, wherein his true claim to invention lies.  He did not supply the "fundamentals of the film" that is used in the art as practised to-day.  The long, pliant, translucent, celluloid film, with the sensitized surface, was the invention and improvement of others.  The pictures taken on such a film are photographs. It is the particular character and arrangement of those pictures for which Mr. Edison is entitled to credit.  But those pictures and their arrangement are nothing more than the result of the

operation of his improved camera apparatus. The problem that was solved by their production and arrangement was a problem of the camera machinery. Appreciating this he insisted, as we have seen, that the complete apparatus should be described, "because the differences which distinguished applicant's film from the prior films are largely due to the features of novelty in the apparatus." Also in explaining why he had not referred in any of his numerous caveats to the character of the film, he said that he was not interested in manufacturing photographic material, and did not regard the film as part of his invention; he looked to the people who made it for that. It seems, also, that while his original application was filed August 24, 1891, the claims for the film were not made until December 28, 1896, in an amendment filed that day. The conversion of this negative film strip into a positive for use in an exhibiting apparatus was effected by one of the familiar processes of the photographic art.

The invention of Edison was exhausted in the construction of the camera which enabled the photographs of moving objects to be taken upon the Eastman film in the distinct, uniform, and satisfactory manner justly claimed for them. The pictures are the direct result of the mechanism of the camera with the Eastman film mechanically adapted to, and applied therein.

In our opinion claim 2 of reissue patent No. 12,192 is unpatentable and void; and the decree must be reversed, with costs, and the cause remanded, with direction to dismiss the bill.

*Reversed.*