## SMITH *v.* NICHOLS.

1. Under the seventh and ninth sections of the Patent Act of 1837, which authorize a patentee, when by mistake, &c., he may have made his specification too broad, to make disclaimer of such parts of the thing patented as he does not claim under it, and to record his disclaimer in the Patent Office, &c., with various provisos as to its effect on suits pending, and as to unreasonable neglect and delay in entering the disclaimer at the Patent Office, the patentee may file a disclaimer as well after as before the commencement of a suit. It would, however, in case of its being filed after, be the duty of the court to see that the defendant was not injuriously taken by surprise, and to impose such terms as right and justice might require. The question of unreasonable delay would be open for the consideration of the court, and the complainant could recover no costs.

2. A mere carrying forward of an original conception patented—a new and more extended application of it—involving change only of form, proportions, or degree—the substitution of equivalents doing the same thing as did the original invention by substantially the same means with better effects—is not such invention as will sustain a patent. It is the invention of what is new, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property and which it secures by patent.

8. Hence, where a textile fabric, having a certain substantial construction and possessing essential properties, has been long known and in use, a patent is void when all that distinguishes a new fabric is higher finish, greater beauty of surface, the result perhaps of greater tightness of weaving, and due to the observation or skill of the workman, or to the perfection of the machinery employed.

APPEAL from the Circuit Court for the District of Massachusetts.

Smith, a holder of a patent from the United States, filed a bill, on the 19th of November, 1868, against Nichols, in the court below, to enforce and protect his rights as patentee. The subject-matter of the patent was an elastic woven fabric, especially adapted to use in forming gores for what are known as Congress or gaiter-boots, though applicable to other uses.

On the 22d of January, 1870, he filed a disclaimer of right to certain matters included in his patent, and on the 27th of May, 1872, of certain other matters so included, both

being alleged to have been included through inadvertence and mistake. These disclaimers were made in virtue of the seventh and ninth sections of the Patent Act of 1837; sections which read thus:

"SECTION 7. Whenever any patentee shall have through inadvertence, &c., made his specification of claim too broad, claiming more than that of which he was the original or first inventor, some material and substantial part of the thing patented being truly . . . his own, any such patentee . . . may make disclaimer of such parts of the thing patented as the disclaimant shall not claim to hold by virtue of the patent, &c., which disclaimer shall be in writing, &c., and recorded in the Patent Office. . . . But no such disclaimer shall affect any action pending at the time of its being filed except so far as may relate to the question of unreasonable neglect or delay in filing the same.

"SECTION 9. Whenever by mistake, &c., any patentee shall have, in his specification, claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the first and original inventor or discoverer, . . . in every such case the patent shall be deemed good and valid for so much of the invention or discovery as shall be truly and *bonâ fide* his own. . . . And every such patentee, &c., shall be entitled to maintain a suit at law or in equity on such patent for any infringement of such part of the invention or discovery as shall be *bonâ fide* his own. . . . But in every such case in which a judgment or verdict shall be rendered for the plaintiff he shall not be entitled *to recover costs* against the defendant unless he shall have entered at the Patent Office, *prior to the commencement of the suit*, a disclaimer of all that part of the thing patented which was so claimed without right: *Provided, however,* that no person bringing any such suit shall be entitled to the provisions contained in this section, *who shall have unreasonably neglected or delayed to enter at the Patent Office a disclaimer as aforesaid.*"

The defendants, relying on *Wyeth* v. *Stone,*[*] a case decided by Story, J., set up that in consequence of these disclaimers being filed after the suit was brought, the suit could not be

---

[*] 1 Story, 273; see also Reed *v.* Cutter et al., Ib. 600

entertained under the said seventh section, inasmuch as the concluding part of that section prevented the disclaimer from affecting any action " pending at the time of its being filed ;" and the suit thus stood as one of a patentee with a patent for things which he confessed were already known ; a void patent, therefore. And, in addition, that as to the second disclaimer—that filed on the 27th of May, 1872, and, therefore, more than four years after the bill was filed— the second proviso of the ninth section about unreasonable neglect and delay in entering it at the Patent Office applied.

But the court did not consider this a sufficient reason for sending the complainant out of court and compelling him to file a new bill; and it therefore heard the case on its merits.

Proceeding then with a general statement as to these.

The fabric patented, as limited by the two disclaimers, was asserted in the bill to be a new manufacture, and that its distinguishing merit consisted in the fact that while it was extremely elastic it might be shaped or cut either cross-wise or bias without detriment to its elastic properties; the rubber cords, which gave to it those properties, being so held by the weft threads of the fabric that they could not " creep " or slip so as to withdraw themselves from their proper position, by any force of tension that might be needed in adapting them to their intended use.

It appeared, indeed, that owing to the excellent manner of weaving, and perhaps from other causes, the fabric had gone into extensive use, and for the especial purpose of elastic gores in gaiter-boots was in fact the only fabric now largely used. The evidence, however, showed that a fabric substantially the same in construction and possessing virtually the same properties, had been known and used in this country previous to the fabric produced and patented by Smith, and that the superiority of the fabric patented was due solely either to improved machinery or to the greater mechanical skill employed in the formation of the fabric, by

which an excellence in degree was obtained, but not one in kind.

The court accordingly dismissed the bill. And the complainant took this appeal.

*Mr. Charles Mason, for the appellant; Messrs. George Gifford and Benjamin Dean, contra.*

Mr. Justice SWAYNE stated the case more particularly, and delivered the opinion of the court.

The bill is founded upon a patent, and was filed by the appellant. It charges infringement. Its object and prayer are to have the defendant enjoined from infringing further, and required to account for the profits he has wrongfully made.

The original patent was issued to the complainant on the 5th of April, 1853. On the 28th of March, 1867, it was extended for seven years. It was subsequently reissued in three divisions, as follows: Reissue No. 2656, June 18th, 1867, division A, for improvements in weaving; reissue No. 3014, June 20th, 1868, division B, for improvements in woven fabrics; and reissue No. 2844, January 14th, 1868, division C, for improvements in looms for weaving. Division B is the only one to be considered in this case.

In the specification the loom and process for weaving corded elastic india-rubber fabrics are described, and the excellence of such fabrics so woven, and the points in which they are superior to fabrics not so woven, are pointed out and insisted upon. The claim is thus expressed:

"What, therefore, I claim as my invention in this subdivison of my patent is—

"The corded fabric, substantially as hereinbefore described, in which the cords are elastic and held between the upper and under weft threads, and separated from each other by the interweaving of the upper and under weft threads with the warp threads in the spaces between the cords, and only there, substantially as above shown."

This bill was filed on the 19th of November, 1868.

On the 22d of January, 1870, the complainant filed a disclaimer of any fabric in which the warp and weft threads are so interwoven between the elastic cords as to form strips of shirred cloth between and by the contraction of the elastic cords—the warp threads in his improved fabric being, as he declared, only interwoven with the weft threads—for the purpose of binding them tightly around the elastic cords. On the 27th of May, 1872, he filed a disclaimer of "any fabric in which the weft threads are so interwoven with the warp threads that the former are not brought halfway around each of said cords, so as to gripe them in such a way as not to permit said elastic cords to slip between said weft threads, in case said cords are cut crosswise or bias."

The substance of the specification as limited by the disclaimers may be thus summarized: The elastic cords are placed side by side, equidistant from each other. They are stretched several times their normal length. In the spaces between the cords warp threads are placed parallel with the cords, and of less size. The cords remain stationary. The warp threads are thrown open by the machinery of the loom. Every alternate thread is thrown upwards and the intermediate one downwards. What is termed a "shed" is thus formed above the cords and one under them. Through each of these sheds a weft thread is passed by means of a shuttle. One of the shuttles is thus passed above and the other below all the rubber cords. After both the weft threads have been driven home by the lathe, the position of the warp threads is inverted by the treadle. Sheds are thus formed on the opposite sides of the cords. Weft threads are then again passed across the fabric. This process is continued until the weaving is completed.

The weft threads form the only covering on the upper and under side of the cords. When their tension ceases after the weaving is done the cords contract in length and increase proportionately in thickness. The weft threads are necessarily brought into proximity with each other. They partially imbed themselves in the cords, hold them firmly, and prevent them from slipping back, if cut anywhere, while

at the tension which subsisted when the weaving took place. So the weft threads cling tightly to the rubber cords in every degree of tension to which they may be subjected. Each of the former grasps firmly each of the latter half round.

The points with respect to this litigation, which the complainant claims as covered by his patent, we understand, are that fewer warp threads are used, that the tightness of the weaving is greater, that the rubber cords in all stages of tension are more firmly and effectually held in his fabric than in any which preceded it,—and especially, the manner in which the weft threads, one above and the other below, grasp each of the rubber cords half round.

It is objected that the disclaimers having been made after the filing of the complainant's bill, cannot avail him in this case. Upon a fair construction of the seventh and ninth sections of the act of 1837, we think they could be made as well after as before the commencement of the suit. It would, in such case, be the duty of the court to see that the defendant was not injuriously surprised, and to impose such terms as right and justice might require. The question of unreasonable delay would be open for the consideration of the court, and the complainant could recover no costs. We see no reason for turning a party out of court to renew the litigation after filing the disclaimer, thus subjecting both parties to the delay and expense which must necessarily follow, and without any benefit to either. We cannot believe such to have been the intention of Congress.*

The defence mainly relied upon is want of novelty; in other words, the prior public use of the things patented.

The counsel for the appellant admits expressly that an elastic fabric with silk on one side and cotton on the other, one woven with two shuttles, one woven with stationary elastic cords, and one with elastic cords covered above and below solely by weft threads, were known and in public use by themselves separately before the alleged invention of the

---

* Tuck *v.* Bramhill, 6 Blatchford, 104; Silsby *v* Foote, 14 Howard, 220; Aiken *v.* Dolan, 3 Fisher, 197; Taylor *v.* Archer, 8 Blatchford. 315; Myers *v.* Frame, Ib. 446; Guyon *v.* Serrell, 1 Id. 244; Hall *v.* Wiles, 2 Id. 194.

complainant. It is also admitted that suspender webbing of different kinds, some provided with elastic cords having strips of cloth interwoven between them, and another class without the strips of cloth and similar to the complainant's, "except that the weft threads *in pairs* were not made to grasp the elastic cords in the manner described in the complainant's specification," also in like manner preceded his invention. The proof to the same effect, less the exception named, is voluminous and conclusive. It is unnecessary particularly to refer to it. The testimony is equally full as to webbing for shoe gores. That, made in the same way as the suspender webbing, also came into public use and was largely sold at as early a period.

The testimony of Hotchkiss establishes conclusively that—also prior to the defendant's invention—he made and sold suspender webbing with what were called binding warps between the rubber warps, with weft threads which "went over all the rubber warps, and under all the rubber warps," and that the fabric was woven while the rubber cords were in a state of tension. He says further, that he had never known suspender webbing made by American manufacturers in any other way. There is a large mass of other testimony relative to the case in this aspect, but it is deemed unnecessary to pursue the subject further.

The evidence before us leaves to the complainant none of the particulars claimed as of his invention, except perhaps greater tightness of the weaving, a firmer grasping of the elastic cords by the weft threads half round, above and below, and greater beauty and value of the fabric. The entire ground of the controversy between the parties is reduced to this narrow isthmus, and the question presented for our determination is one rather of law than of fact.

A patentable invention is a mental result. It must be new and shown to be of practical utility. Everything within the domain of the conception belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which

preceded it, and be an improvement. In such case it is patentable. The prior patentee cannot use it without the consent of the improver, and the latter cannot use the original invention without the consent of the former. But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large.

The question before us must be considered in the light of these rules. All the particulars claimed by the complainant, if conceded to be his, are within the category of *degree.* Many textile fabrics, especially those of cotton and wool, are constantly improved. Sometimes the improvement is due to the skill of the workmen, and sometimes to the perfection of the machinery employed. The results are higher finish, greater beauty of surface, and increased commercial value. A patent for the better fabric in such cases would, we apprehend, be unprecedented. The patent in the present case rests upon no other or better foundation.

DECREE AFFIRMED.