## H. K. PORTER CO. v. BALDWIN LOCOMOTIVE WORKS et al.

(District Court, E. D. Pennsylvania. December 31, 1914.)

### No. 751.

PATENTS ⬡⟲328—INVENTION—METHOD OF OPERATING COMPRESSED AIR ENGINES.

The Hodges patent, No. 953,334, for a method of operating compound compressed air engines, which consists in conducting the working air on its passage from the high pressure to the low pressure cylinder through an intermediate chamber, through the walls of which it absorbs heat from the atmosphere, is void for lack of invention, in view of the prior art, and especially in view of the fact that claims made by the patentee, in a prior application for a patent, for an apparatus which operated in accordance with the same method, were rejected for want of invention by the Patent Office, which was sustained by the court on appeal.

⬡⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the H. K. Porter Company against the Baldwin Locomotive Works and the Four States Coal & Coke Company. On final hearing. Decree for defendants.

James I. Kay and Robert D. Totten, both of Pittsburgh, Pa., and Francis T. Chambers, of Philadelphia, Pa., for plaintiff.

William A. Redding and William B. Greeley, both of New York City, for defendants.

THOMPSON, District Judge. The complainant's patent, No. 953,-334, for which application was filed June 11, 1909, and patent allowed March 29, 1910, is for a method of operating compound compressed air engines. The complainant relies on claims 1 and 4, which are as follows:

"1. The method of operating compressed air engines, consisting in carrying the air at high pressure through and expanding it in one cylinder and thereby reducing it below lowest atmospheric temperature, reheating the exhaust air from said cylinder when confined by extended exposure to air heating at atmospheric temperature and thereby increasing the volume thereof and its capacity to generate power, and carrying the reheated air through a low pressure cylinder."

"4. The method of operating compressed air engines, consisting in carrying the air at high pressure through and expanding it in one cylinder and thereby reducing it below lowest atmospheric temperature and reheating the exhaust air when confined by extended exposure thereof to air at atmospheric temperature and thereby increasing it to the necessary volume to generate substantially like power within another cylinder of greater cubical contents and carrying such reheated air through such low pressure cylinder."

The distinction between the two claims is that the object of the method under claim 1 is to increase generally the volume of air exhausted from the high pressure cylinder in its discharge to the low pressure cylinder, and its capacity to generate power, while the fourth claim is more specific, in that it states as the object the increasing of the compressed air in its discharge from the high pressure cylinder to the low pressure cylinder to the necessary volume to generate power within the low pressure cylinder equal to that in the high pressure cylinder.

The difficulties in compressed air engines, which the patentee attempted to overcome, are caused by the fall in temperature of the compressed air in the high pressure cylinder in expanding, thereby freezing any moisture present, forming snow and frost upon the valves, and freezing the lubricants of the engine, so as to interfere with its operation. It was found that there was a limit of low temperature which prohibited the expansion of the working air to an extent beyond that which would produce such a degree of low temperature. These difficulties prevented the obtaining of power from the working air to its full capacity for expansion. It had been well known in the art that in a compound compressed air engine the heating of the exhaust compressed air while passing from the high pressure cylinder to the low pressure cylinder would overcome the difficulties due to freezing and solidification or thickening of the lubricant, and would increase the expansive power of the exhaust air which remained under a consider-

able degree of compression while confined in passing from the one cylinder to the other.

While this was the state of the prior art, Hodges, the patentee, filed October 10, 1904, his application for a patent for an interheater for compound compressed air engines, upon which patent No. 868,560 was issued October 15, 1907. The application contained the following claims, which were rejected by the examiner:

"1. An interheater for a compound compressed air engine, which consists of a receptacle receiving air from the high pressure cylinder and delivering air to the law pressure cylinder and provided with an extended surface adapted to absorb heat from the atmosphere at normal temperature and impart heat so absorbed to the compressed air in its flow to the low pressure cylinder, substantially as described.

"2. An interheater for a compound compressed air locomotive engine, which consists of a receptacle receiving air from the high pressure cylinder and delivering air to the low pressure cylinder, the said receptacle provided with an extended heating surface and arranged to receive a flow of atmospheric air at normal temperature over said surface, substantially as described.

"3. An interheater for a compound compressed air locomotive engine, which consists of a receptacle receiving air from the high pressure cylinder and delivering air to the low pressure cylinder, together with means operative on the operation of said locomotive engine for causing a flow of atmospheric air at normal temperature over said heating surface, substantially as described.

"4. An interheater for a compound compressed air engine, which consists of a receptacle receiving air from the high pressure cylinder and delivering air to the low pressure cylinder, and provided with an extended heating surface, together with means for causing a flow of atmospheric air at normal temperature over the said surface of said receptacle, substantially as described.

"5. An interheater for a compound compressed air engine, which consists of a receptacle for the air in its passage from the high pressure cylinder to the low pressure cylinder, provided with an inlet at its lowest end and an outlet at its upper end, and having an extended surface exposed to the heating influence of atmospheric air at normal temperature, substantially as described."

A comparison of the claims of the two patents in the light of the specifications makes it apparent that the only substantial matter in which they differ is that the rejected claims of the prior patent were for an interheater for using atmospheric air at normal temperature for imparting heat to the working air, while those of the patent in suit are for a method of operating compressed air engines in which the only claim of novelty is in the method of using the heat of the atmospheric air at normal temperature in the interheater for imparting heat to the working air.

In determining the bearing of the five rejected claims of the application for the prior patent upon the patent in suit, the action of the tribunals considering the claims which resulted in their final rejection will be considered. It appears by the file wrapper that the primary examiner in charge rejected the claims in view of the Reynolds & Haupt patent No. 222,950, of December 23, 1879, for an improvement in pneumatic motors. The claim in the Reynolds' patent is for:

"The combination, with a compound engine for the use of compressed air as a motive power, of a heater, arranged between the high and low pressure cylinders of such engine, and containing heated water or other liquid, through or in direct contact with which the air passes on its way from the high

pressure to the low pressure cylinder, substantially as and for the purpose herein described."

Upon a request for reconsideration the claims were again rejected by the primary examiner upon an additional reference to Nutty patent, No. 745,373, of December 1, 1903, for utilization of compressed air. This patent shows high and low pressure air engines connected by pipes. Nutty heated the working air by means of hot water contained in reservoirs; the air being brought in contact with the hot water and maintained in its heated condition by means of a heater supported upon the engine. The examiner cited as examples of the prior use of atmospheric air for heating the British patent to Geisenburger, No. 3056 of 1871, for air and gas engines, Caloric; the patents to Palmer, No. 344,006, of June 22, 1886, and to Dickerson, No. 655,148 of July 31, 1900, both of which were for refrigeration. Upon appeal to the board of examiners in chief, the assistant examiner in charge stated, referring to the patents to Nutty, Reynolds, Geisenburger, Palmer, and Dickerson:

"The claims differ from Reynolds only in the substance used for cooling the air as it passes through the interheater on its way from one power cylinder to the other. The use of atmospheric air as a heating material is common as shown by Geisenburger, Palmer, or Dickerson, and by substituting air for the heating material used by Reynolds, a structure the same as applicant's is obtained. This combination is substantially shown by Nutty. In Nutty the pipes *p* and *q* connecting the high and low pressure cylinders are exposed to atmospheric air which will tend to bring the air in the pipes to the temperature of the atmosphere, or there will be an interchange of heat."

The examiners in chief affirmed the decision of the primary examiner upon the following grounds:

"The examiner states that the thing claimed differs from the heater shown in the Reynolds & Haupt patent 'only in the substance used for cooling the air as it passes through the interheater on its way from one power cylinder to the other.' and that 'the use of atmospheric air as a heating material is common, as is shown by Geisenburger, Palmer or Dickerson.' The examiner's conclusion is that it would require no invention to make this substitution and we agree with him."

Thereupon an appeal was taken to the Commissioner, who agreed with the conclusions of the examiners in chief for the reasons stated by them and affirmed their decision. The cause thereupon came before the Court of Appeals for the District of Columbia on an appeal from the Commissioner of Patents, and for its bearing upon the questions at issue, I cite from the opinion of Mr. Justice Robb of that court:

"A compound compressed air engine is an engine in which the compressed air is first used in a high pressure cylinder: that is, in a cylinder of relatively small diameter, and, after driving the piston connected therewith, instead of being permitted to escape is conveyed to a low pressure cylinder, that is, to a cylinder of larger diameter where it still has sufficient expansive force to drive another piston. This operation may be again repeated in a third cylinder, or the air be permitted to escape to the atmosphere. When the compressed air enters the first cylinder, it necessarily partially expands and in expanding becomes much colder, and by becoming colder its expansive power is, of course, correspondingly lessened or diminished. It is manifest, therefore, that any arrangement or device that will operate to warm or heat the air after it leaves one cylinder and before it enters the next will greatly increase its efficiency in the second cylinder. Inasmuch as such compressed

air, after being partially expanded in the first cylinder, is frequently colder than atmospheric temperature, appellant has arranged what he calls an 'interheater,' which in fact is a plurality of longitudinally extending tubes within and along which the compressed air flows from one cylinder to another, and over which a current of atmospheric air passes. The atmospheric air, being warmer than the compressed air within the tubes, imparts or gives up some of its warmth to the compressed air within, and to that extent increases the efficiency of the compressed air. It is simply a reversal of the old idea of warming atmospheric air by a plurality of tubes called radiators, through which steam or hot water passes. In one case the atmospheric air absorbs heat from the substance within the tubes, and in the other case it imparts heat to the tubes and the substance therein.

"The following references are cited by the Commissioner as the basis for the rejection of the above claim: British patent, No. 3056 of 1871, Geisenburger; No. 222,950, December 23, 1879, Reynolds & Haupt; No. 344,006, June 22, 1886, Palmer; No. 655,148, July 31, 1900, Dickerson; No. 745,373, December 1, 1903, Nutty.

"Reynolds & Haupt in their specification say 'we employ an engine of the compound type and though we may or may not heat the air before its introduction to the engine *we always heat it after its exhaust from the high pressure cylinder and before its induction to the low pressure cylinder;* and to this end our invention consists in the combination, with a compound, engine for the use of compressed air for motive power, of a heater placed between its high and low pressure cylinders and containing heated water or other liquid, through or in contact with which the air passes between its eduction from the one cylinder and its induction into the other.' It will be observed that this patent, like the claim in issue, has reference to an interheater for a compound compressed air engine, the only real difference being that Hodges uses atmospheric air instead of a liquid substance to impart heat to the compressed air within the interheater. Inasmuch as it is obvious that, under certain conditions, an interheater dependent wholly upon atmospheric air for its successful operation possesses advantages over one requiring some liquid substance, Hodges will be entitled to a patent if it can be successfully demonstrated that he is the originator of the idea embodied in this difference between the two devices. On the other hand, if he is not the originator of the idea of using atmospheric air to impart heat to air within some receptacle for the purpose and with the effect of increasing its expansive force, then obviously he ought not to be given a monopoly on all such devices. We pass, therefore, to the other references to determine this question.

"The Dickerson patent, as described by him, 'consists in the combination, with a receiver for containing the liquid air, of an air motor connected therewith through suitable intermediate expansion coils or chambers, and a blower or fan which is driven by the motor and which is arranged to produce a current of air over the expansion coil, so as to impart to the latter sufficient heat to effect the expansion of the air therein and to be delivered at a reduced temperature into the room or other space which is to be cooled and ventilated. * * * The expansion coils are located in the conduit, through which air is forced by the blower, so that by the absorption of heat from the latter the air in said coils is raised in temperature and expanded. This expanded air on reaching the reservoir is still further expanded by the absorption of heat from the incoming air and exerts a sufficiently high pressure to run the motor.' Without describing this patent further, we refer to the statement in the brief of counsel for appellant in reference thereto: 'Although Dickerson here shows that one body of air may impart heat to another body flowing in a coil, and by thus imparting heat may increase the expansive power of the inclosed body of air, it teaches nothing more which is pertinent to the invention under consideration.'

"Appellant concedes he did not invent the interheater. He found that in the Reynolds & Haupt patent. His claim is for a device susceptible of using atmospheric air, instead of a liquid substance, to heat and expand air therein, and in the Dickerson patent we find such a device for such a purpose. We

think appellant concedes this in the statement taken from his brief. In Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566, it is said: 'A mere carrying forward or new or more extended application of the original thought. a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent.'

"The use of atmospheric air as a heating medium is also shown in the Geisenburger patent, and also in the Palmer patent. In the Geisenburger patent the carbonic acid gas in liquid form passes to the expansion cylinder through a coil or heater 'inclosed in a tank or vessel filled with water or *air*, or any body capable of having the same temperature as the circumambient air.' A careful examination of these cited patents and the drawings and specifications filed therewith convinces us that the Commissioner of Patents was right in disallowing all these claims, and we therefore affirm his decision, and direct the clerk to certify the proceedings in this court to him as the law provides."

The application for the patent in suit was filed June 11, 1909. The claims were originally rejected, the examiner citing Rix patent, No. 605,187, June 7, 1898, for air and gas pumps, in view of Worthington, No. 917,232, April 6, 1900, and Bushnell, No. 137,889, April 15, 1873, air and gas pumps, air motors; but subsequently, December 20, 1909, they were held allowable by the examiner and the patent issued March 29, 1910.

The Rix patent related to a pneumatic pump operated by a compound compressed air engine having a high pressure cylinder and a low pressure cylinder. The interheating of the air between the high pressure and low pressure cylinders was accomplished by causing the water on its way to the pump to pass over an interheating casing containing pipes leading the exhaust compressed air from the high pressure cylinder to the low pressure cylinder.

Subsequent to the favorable decision of the examiner, the application was amended by inserting a reference to the prior Hodges patent, No. 868,560.

It is contended by the defendants that the supposed invention covered by the claims for the method of the patent in suit is coextensive with the claims for the apparatus Nos. 1 to 5, which were included in the original application for the prior patent and were rejected and canceled; that the patent in suit for the method was therefore improperly granted; and that the alleged method is nothing more than the necessary mode of operation or function of the apparatus for which Hodges had previously obtained letters patent.

It is urged by the defendants that, if the examiner had been aware of the references cited in the rejection of the previous application showing that heating for expanding compressed air and atmospheric air as a means of interheating were known in the prior art, he would have rejected the claims of the second application on the ground that no invention was involved in substituting atmospheric air heating for the interheating means used in connection with compound compressed air engines as disclosed in the Rix and the Reynolds and Haupt patents, and that if the examiner had known of the decision of the Court of Appeals of the District of Columbia, sustaining the action of the Patent Office in rejecting claims 1 to 5 of the prior patent, he would have been bound by force of this superior authority to reject

the claims presented in the later application, as being of practically equal scope with those rejected in the prior application.

The defendants further refer to two patents alleged to be anticipations of complainant's method of operating a compound compressed air engine, namely, Hill, No. 244,601, July 19, 1881; and Smith, No. 596,386, December 28, 1897. Both of these patents relate to refrigerating apparatus, but it is claimed by the defendants that the apparatus disclosed include compound compressed air engines operated according to the method claimed by Hodges.

It is contended by the complainant that the Hill and Smith patents are not anticipations, because they relate to a different art, namely, that of refrigeration, while the patent in suit relates to the production of power. In both of these patents the primary object is the maintaining of an even temperature in the chill room of a refrigerating plant by a continuing circulation of air of low temperature obtained by expansion of compressed air in a compound compressed air engine.

The Hill patent discloses an arrangement which is thus defined in the specifications:

"The object of this arrangement of the apparatus is to draw out the warmest air of the chill room, and by bringing it in close contact with the expanding engines and their interheater to extract all possible heat from it and use it for doing work in driving the compressors."

In the Smith patent, the specification states:

"The invention is based upon the fact that atmospheric air, when compressed and then cooled, will, upon such air being made to perform mechanical work during its expansion, have its temperature lowered, and will consequently lower the temperature of bodies in contact with it, owing to the absorption by such expanded air of heat from bodies in its particular locality."

And again in the specification:

"During the expansion in the cylinder $M$ the air does work in assisting to compress the air in cylinders $G$ and $C$, and during this practically adiabatic expansion the working air becomes cooled to a temperature depending on the initial pressure and temperature, and the amount of expansion is so regulated that the air is cooled to a temperature a little lower than that of the refrigerating room, say to a temperature of 36 degrees centigrade or 238 degrees absolute. * * * The air is drawn off through the pipe $P$ to the second expanding cylinder $Q$, where it is again allowed to expand till its pressure falls to about 40 pounds per square inch absolute and work in assisting to drive the compressors $C$ and $G$, the expansion being regulated by means of any approved expansion valve and the temperature of the air falling to 238 degrees absolute. The expanded air then exhausts from the cylinder $Q$ through pipe $R$ at a lower temperature than that of the cooling chamber, namely, 238 degrees absolute, into the surface condenser $S$. By the circulation of air by blowers $U^3$ $U^4$ through and from the tubes in the surface condenser the temperature of the air is again raised during its passage from the pipe $R$ through the condenser to the pipe $T$ to the temperature 252 degrees absolute. The air, having completed the cycle, is reduced to its initial pressure and temperature and is consequently ready to go through the same process again. It must be distinctly understood that the pressures and temperatures given above are subject to alteration according to circumstances, the efficiency of the plant becoming greater as the range of temperature is reduced."

It is apparent that both the Hill patent and the Smith patent disclose a compound compressed air engine, the use of an air interheater between the cylinders, increasing the volume of the exhaust air from the high pressure cylinder and its capacity to generate power, and the carrying of the reheated air into the low pressure cylinder of the compound engine.

Notwithstanding the fact that the primary object of the Smith and Hill patents is to cool the air in the chill room by means of the expansion of the compressed air, while the object of the patent in suit is to produce power by the transfer of the heat of the surrounding air to the compressed air, I fail to see any essential and fundamental difference between the interheating methods employed by Hill and Smith and that employed by Hodges. In either case the temperature of the compressed air after expansion is raised and that of the surrounding air lowered, but in effect it is a mere exchange between the heat in the surrounding air and the air confined within the pipes of the interheater. Moreover, in the Smith and Hill patents there is the stated object of obtaining additional work from the compressed air by raising its temperature. While the amount of power produced in the Smith and Hill apparatus would perhaps be negligible as an effective sole means of producing power, yet this is a difference merely of degree and not of principle.

The contention of the complainant that, in the patents for refrigerating apparatus, its invention is not anticipated because they are applicable to another art than that of producing power, is not sustained upon an examination of those patents because the production of power is an essential object in the Smith and Hill patents as a function employed in the apparatus in accomplishing the effect of refrigeration. The complainant relies upon the well-established principle that a patent for an apparatus in which a new method is employed does not preclude the patentee from later obtaining a method patent for the process. The claims in the prior patent, however, were rejected because the method was not new, that is, because air as a means of interheating was not new, and that is what is shown by the prior patents cited by the defendants. The use of air as a means of interheating is the essence of the method of the patent in suit and is the function or mode of operation of his prior patent.

While the patentee has no doubt overcome many difficulties in the practical working of compound compressed air engines, what he did is tersely described by Judge Robb in his opinion cited above as—

"simply a reversal of the old idea of warming atmospheric air by a plurality of tubes, called radiators, through which steam or hot water passes. In one case the atmospheric air absorbs heat from the substance within the tubes, and in the other case it imparts heat to the tubes and the substance therein."

Everything claimed as novelty disclosed by claims 1 and 4 of the patent in suit is covered by claims 1 to 5, inclusive, in the application under the earlier patent. While the action of the Patent Office in granting a patent is prima facie evidence of its validity, it is apparent from the record in this case that the examiner did not have under consideration prior patents which show anticipation, nor did he have

the rejection of the prior claims before him. As the prior claims were rejected because the use of air as a means of heating was not new, the prima facie effect of the issuing of the patent in suit loses its force. If the Hill and Smith patents and the references cited by Judge Robb in sustaining the rejection of claims 1 to 5 of the earlier patent had been before the examiner in considering the patent in suit, no doubt the result would not have been the issue of the present letters patent.

It is concluded that no patentable invention is disclosed in the method of operating compound compressed air engines by the use of atmospheric air as an interheating means in view of the prior art; that the method described in claims 1 and 4 is nothing more than the necessary mode of operation of the apparatus for which the patentee, Hodges, had previously obtained letters patent No. 868,560; that these claims are coextensive with the claims 1 to 5 for the apparatus which were rejected upon the application for the prior patent on the apparatus; and that the patent in suit for the method of operation was improperly granted, and is invalid.

A decree may be entered dismissing the bill.