DUPLEX ENVELOPE CO., Inc., v. A. S. KRATZ CO., Inc., et al.

(District Court, E. D. Virginia.  June 25, 1915.)

1. PATENTS ⊙⇒328—INVENTION—DUPLEX ENVELOPE.
   The Stevens patent, No. 1,013,571, for a duplex contribution envelope, is void for lack of patentable invention in view of the prior art.

2. PATENTS ⊙⇒37—INVENTION—IMPROVEMENT PATENTS.
   Every simple improvement of an article is not patentable, but it must be the result of an original conception of something which is new and useful and adds substantially to the knowledge of the art.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 41–44; Dec. Dig. ⊙⇒37.]

In Equity.  Suit by the Duplex Envelope Company, Incorporated, against the A. S. Kratz Company, Incorporated, and the Union Envelope Company.  On final hearing.  Decree for defendants.

Church & Church, of Washington, D. C., and Charles V. Meredith, of Richmond, Va., for complainant.

Whitaker & Prevost, of Washington, D. C., and Hill Carter, of Richmond, Va., for defendants.

WADDILL, District Judge.  [1] This suit is filed to enjoin the alleged infringement of letters patent No. 1,013,571, issued by the United States to the complainant as assignee of Willis F. Stevens, on the 22d day of January, 1912, for what is known as a duplex envelope, used especially in church collections, whereby the offerings made, whether for general church or benevolent purposes, are placed in separate pockets or compartments in the envelope, each envelope being numbered so as to preserve the identity of the donor, who is presumably registered by number on the treasurer's books of the church, with the amount of the yearly donation to be given to the respective objects.

Complainant's claim 2 of the patent in suit sets forth the invention as follows:

"2. A contribution envelope formed of a body and main flap connected together at the bottom and side edges and along a central line perpendicular to the bottom to form plural pockets arranged edge to edge, there being a line of weakness between the pockets, whereby they may be torn apart without being opened, a gummed sealing flap connected at one edge to the edge of the body adjacent the pocket openings, said sealing flap having its ends ungummed and of reduced width to expose the wall of the pockets below said ends and beyond the body of the flap and in line with the flap for the impression of an identification number and to form an opening for the insertion of an opener, and an identification number on the wall of the pockets in line with the sealing flap, and contribution classification data on the main flap below the sealing flap, whereby the openings to the pockets and classification data are simultaneously exposed to view."

The defendants admit the use of envelopes similar to those covered by the patent, and contest the validity of complainant's patent alike for its lack of novelty of invention, as because anticipated by others in the prior art.  They also say that they have long been engaged in

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the business of manufacturing and selling duplex envelopes; that the complainant had been for a long period of time their sales agent, and its president their former secretary, and that, while the contract of agency no longer exists, they are still largely engaged in the business, and to sustain the validity of complainant's claim would seriously and disastrously affect their business; that the alleged improvement involves nothing novel, or that shows inventive genius, regarding a matter in respect to which they have as much or a greater right than the complainant. The complainant does not seriously contend that there is anything especially novel or of great originality in the patent in suit, but insists that it has succeeded in producing, by a combination of old elements, a new and effective envelope that is valuable and operative in character; whereas those that preceded it were, for one cause or another, lacking in utility, and ineffective, compared with the completed product patented by it.

The great purpose to be attained in the making of the envelope was to secure one in which money could be, without confusion, easily placed in the different pockets, confined therein, identified by number, readily opened, and in so doing the number preserved. Several patents of the prior art, including one issued to the complainant, apparently contained all these elements, but the complainant says that, even in its own patent, which was the last prior to the one in suit, the number of the contributor was printed upon the flap at the top of the envelope, was not easily opened, and when opened was liable to be destroyed; whereas, the patent in suit contained the same character of flap, clipped at each end, so as to facilitate the opening of the same, and placed the number substantially where it was before on the flap, upon the body of the envelope, that is, printed on the envelope itself, as distinguished from the flap, which is the distinguishing feature in the patent in suit, and the one upon which the complainant bases its claim, so much so that it admits there would be no infringement, if the number were printed on the bottom or sides thereof, instead of at the top corners of the envelope.

Thus it will be seen upon what a narrow margin this case rests, namely, one of confessed prior anticipation in the art, of lack of novelty in invention, and the mere claim of a right to patent by reason of the clip of the flap, and the location of the number in the top corners of the body of the envelope, instead of on the flap. Envelopes with pockets, perforated to be easily separated, with proper means of sealing, and the proper number printed thereon, and other printed matter, have all gone before, and are in common use. Envelopes containing pockets, including those with the cutaway, as distinguished from the square flaps, are in common use, and the complainant's device can be maintained as patentable only upon the theory that by placing the printed number where it is now placed, under the claim of the patent, in connection with the other elements of the patent, it has produced something of sufficient utility to make the same patentable, and give to itself the exclusive use thereof. The court cannot see its way clear to sustain this view. The placing of the number as arranged by the complainant, in connection with the other elements of the patent,

produces nothing either novel or useful arising from a combination of old elements, as in its judgment entitles the complainant to a patent therefor, and to the injunctive relief. sought by the bill.

Specimens of the complainant's envelopes under the patent in suit, together with one under a patent previously issued to complainant, with the immaterial printed matter on each omitted, are here shown, with a view of better illustrating just what it is complainant claims in the patent in issue:

PLAINTIFF'S EXHIBIT N⁰ 6

28  MAR. 26, 1911.  |  MAR. 26, 1911.  28

CURRENT EXPENSES  |  BENEVOLENCES.

PLAINTIFF'S EXHIBIT N⁰ 7
(PATENT IN SUIT.)

61  AUG. 20, 1914  |  AUG. 20, 1914.  61

CHURCH EXPENSES  |  BENEVOLENCES.

[2] It may be conceded to be a matter of difficulty frequently to determine whether a particular improvement is a mere mechanical device, or involves the exercise of creative ability and genius entitling it to patentability; and a new combination of old elements which produces new and useful results may entitle the inventor to a patent; but whether the alleged improvement in the patent in suit involves more than mechanical skill, or what would have arisen from mere common observation, may be seriously doubted. Every simple improvement in an article is not patentable. It must involve an original conception; that is, of what is new, of what is useful, and not something of which the public theretofore had knowledge, and to which it was entitled. Authorities to support this view might be cited almost without number, but only a few will be given. In Smith v. Nichols, 21 Wall. 112, 119 (88 U. S. 566), 22 L. Ed. 566, it was said:

"A patentable invention is a mental result. It must be new and shown to be of practical utility. Everything within the domain of the conception belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which preceded it, and be an improvement. In such case it is patentable. The prior patentee cannot use it without the consent of the improver, and the latter cannot use the original invention without the consent of the former. But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of

such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large."

In Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438, Mr. Justice Bradley, speaking for the Supreme Court, on page 200 said:

"The design of the patent laws is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

And further quoting from Mr. Justice Bradley, on page 200 of 107 U. S., on page 231 of 2 Sup. Ct. [27 L. Ed. 438], of the same case:

"To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences."

The changing of the position of the number intended to designate the contributor, from the flap to the body of the envelope, certainly cannot be said to involve any inventive genius or skill, but on the contrary only what would present itself to any thoughtful person as a more convenient method of facilitating the handling of the same, and indicates nothing which shows such inventive skill or genius as would call for the granting of a patent therefor; and while the utility of the new device may be conceded, and complainant is entitled to all the presumptions arising as well from the granting of the patent as from its success from a commercial standpoint, still the court cannot and does not believe that thus placing the number on the envelope, instead of on the flap, involved anything patentable in the then state of the art.

It follows from what has been said that the injunction asked for by the complainant should be denied, and its bill dismissed.