**SIX–WAY CORPORATION v. McCURDY & CO., Inc.***

No. 283.

Circuit Court of Appeals, Second Circuit.

July 6, 1936.

Pennie, Davis, Marvin & Edmonds, of New York City (George E. Middleton and Samuel R. Gerstein, both of New York City, of counsel), for defendant-appellant.

Charles W. Parker and Max D. Farmer, both of Buffalo, N. Y., for complainant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of United States patent No. 1,890,358, issued to Edward J. Barcalo and now belonging to the complainant. The invention relates to a pillow or cushion adapted to provide a comfortable support or rest for the back, head, or other portion of a person while in recumbent or more or less sitting position, and also to provide a pillow having means which prevent objectionable deformation of the pillow when in use.

The specification states that the pillow preferably comprises a sack of flexible woven or other suitable fabric containing an elastic filling which may be made of hair, cotton, or other soft or more or less pliable material adapted to form a comfortable cushioned support for the head, shoulders, or other portion of the body of a person.

The novelty of the invention chiefly relied on seems to be its shape which is described thus: "The pillow is made of triangular or substantially triangular shape in longitudinal cross section, having opposite substantially triangular ends * * * and three connected sides * * * extending between and connecting the corresponding edges of the triangular ends. Preferably, the triangular ends of the case are of substantially the shape shown, each having three different or unequal angles, of which the angle 16 is a slightly obtuse angle, and the other two angles 17 and 18 are acute angles of different degrees. It is believed that the best practical results are obtained by making the pillow with substantially the angles indicated in the diagrammatic Figures 3–8, and with the sides 13, 14 and 15 approximately 11, 14 and 18 inches in width respectively."

The specification also provides for a stay consisting of a tape or cord extending through the filling of the pillow and attached to buttons externally which may be shortened or lengthened so as more or less to compress the filling and to resist outward spreading or bulging of the ends under weight or pressure on the pillow, to prevent deformation, and to make

*Writ of certiorari denied 57 S. Ct. 122, 81 L. Ed. ——.

**6**

the pillow firmer or softer by tightening or loosening the stay.

It is further stated in the specification that, by reason of the described shape of the pillow, it is adapted to be used in any of six positions shown in figures 3–8, and added that: "These different possible positions of the pillow adapt it to meet the changing needs of readers, invalids or convalescents and afford them the maximum comfort by providing a cushioned support to suit various different postures of the body. Thus, the pillow furnishes supporting surfaces of different slope, extent and position, without the recognized objections inherent in the adjustable, rigid back supports heretofore used."

The claims Nos. 2 and 3 which are relied on read as follows:

"2. A pillow comprising a case formed of freely flexible sheet material, and filled with relatively soft, pliable, elastic material, said pillow as filled being relatively soft, pliable and elastic, substantially triangular in transverse cross section, of substantially pillow length, and having rectangular side faces connecting the triangular ends, the two shorter edges of each triangular end being nearly but not equal in length and at least approximately one foot in length, and including between them an angle of about a right angle, whereby each of the three side faces will provide a supporting face of substantial proportions and width, and the pillow will provide a supporting surface at any of a plurality of different inclinations to the horizontal, depending upon which of its side faces the pillow is resting upon.

"3. A pillow comprising a case formed of freely flexible sheet material, and filled with relatively soft, pliable, elastic material, said pillow as filled being relatively soft, pliable and elastic, substantially triangular in transverse cross section, of substantially pillow length, and having rectangular side faces connecting the triangular ends, the two shorter edges of each triangular end being nearly but not equal in length and at least approximately one foot in length, and including between them an obtuse angle of slightly more than 90 degrees, whereby each of the three side faces will provide a supporting face of substantial proportions and width, and the pillow will provide a supporting surface at any of a plurality of different inclinations to the horizontal depending upon which of its side faces the pillow is resting upon, the obtuse dihedral angle of the pillow insuring an approximately right dihedral angle after the pillow yields by forces acting thereon in a direction tending to close the obtuse dihedral angle."

The trial judge held that the above claims were valid.

Diagrammatic figures 3–8 of the patent which illustrate the six positions of the pillow are set forth as follows:

The specification describes the advantages of the various forms of the patented pillow as follows:

"Thus, in the position shown in Fig. 3, the pillow is adapted to support the back, shoulders and head of the user in a reclining position, with the head against the head board or other support. While in the position of Fig. 7 the back or shoulders are adapted to be supported in the same position, with the head free above the corner of the pillow in front of the head of the bed or couch.

"In the position shown in Fig. 6, the back, head and shoulders are adapted to rest against the pillow in a more nearly upright position, while in the position shown in Fig. 4, the same angle of support is provided, but leaves the head and shoulders free above the pillow out of contact with the head of the bed or couch. In the positions shown in Figs. 5 and 8, the pillow provides respectively a high or low, substantially upright back support spaced forwardly away from the head of the bed or couch."

The trial judge held the claims we have set forth valid and infringed. But, even if we assume infringement, it is impossible to attribute validity to the patent.

United States patent No. 804,750 to Meinecke & Hogan shows a triangular pillow having substantially the same lines as those described by Barcalo. It is true that the pillow is not described in the Meinecke patent, but it is clearly exemplified and is used for the very purpose for which Barcalo uses his. In United States patent No. 885,243 to Haas wedge-shaped cushions are shown for use upon an operating table closely resembling the pillows of the patent in suit.

In connection with this use of the pillow, the patentee states that: "For supporting portions of the body against lateral movement or for imparting lateral pressure relatively short wedge shaped pads or cushions $C^4$ are provided * * * in which the body of the patient may rest with the maximum comfort."

It is well settled that: "It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267.

See, also, Smith v. Nichols, 21 Wall. 112, 119, 22 L.Ed. 566, where Swayne, J., said that: "a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such an invention as will sustain a patent."

Under the foregoing principle the patent to Haas is pertinent prior art. The contention that, because the pad shown in that patent was used to secure lateral pressure, it must have been firmer and less resilient than the Barcalo pillow, does not militate against it as a reference, for such a matter as firmness or resiliency is of degree which is left open by the words "relatively soft, pliable, elastic material" found in the claims. Certainly the extent of firmness or elasticity existing in a pillow should not determine invention.

The illustration of a triangular pillow in the number of "House Beautiful" for February, 1930, shows a shape that resembles those of the patent in suit. It is true that the pillow there shown was made on a frame with padding on only one side, but it would require no inventive thought to pad the other sides as well and thus convert it into a cushion substantially like the one the patent describes. The cushion illustrated in "House & Garden" of May, 1931, and used as a back rest for chairs, seems a still closer reference. The United States patent No. 1,222,175 to Bobrick shows a triangular cushion for an auxiliary seat back for automobile drivers. While this cushion may ordinarily be set at only one angle, yet it is capable of use in various positions, and differs little from the general shape of the Barcalo pillow.

The attempt to sustain the patent by proof of commercial success was a failure. The sales amounted to 61,171 pillows for the aggregate sum of $124,350 during three years, and this was accomplished at a cost of $15,000 for advertising. Such an output in the pillow business is hardly sufficient to show a significant step in the art. While complainant makes a good pillow, the device does not call for the display of any inventive genius. The only basis for even a claim of validity is that the angles which the Barcalo pillow possesses have some advantages. But the inclined face of a triangular pillow, even

where the triangle is equilateral, will afford a sloping support to those who recline upon it. If the sides are of different lengths, there, of course, will be a greater variety of angles and consequently of supports, but the embodiment of the idea of a variety of angles of support is too obvious to justify the granting of a monopoly. Accordingly the patent in suit is void for lack of invention.

The decree is reversed, with costs, and the cause is remanded to the District Court, with directions to dismiss the bill.