**J. M. FISHER CO. v. SPEIDEL
CORPORATION.**
Civ. A. No. 15.

District Court, D. Rhode Island.
Jan. 4, 1940.

Herbert B. Barlow, of Providence, R. I.,
for plaintiff.

Roberts, Cushman & Woodberry, of
Boston, Mass., and Perley H. Plant, of
Providence, R. I., for defendant.

MAHONEY, District Judge.

This is a civil action brought by the
plaintiff, J. M. Fisher Company, a corpora-
tion incorporated under the laws of the
State of Rhode Island, and having its
principal place of business in Attleboro
in the Commonwealth of Massachusetts,
for injunctive relief and for an account-
ing for damages and profits from the
defendant, Speidel Corporation, a corpo-
ration also incorporated under the laws
of the State of Rhode Island, with its
regular and established place of business
in the City of Providence in said State
of Rhode Island, for alleged infringe-
ment of a patent.

The number of the patent is 2,129,491.
The application had been filed by Lewis S.
Chilson, the alleged inventor, on February
16, 1938, and assigned to the plaintiff.

The patent was granted to the plaintiff
on said assigned application on September
6, 1938.

The defendant denies the validity of
the patent and the alleged infringement of
claim 3. It relies for its defense upon
the prior art. The issue is one of in-
vention. The specification recites that:

"This invention relates to a locket;
and has for one of its objects the provi-
sion of a book-shaped locket in which
pictures may be mounted and all of the
parts held together by some means other
than solder.

"Another object of the invention is the
provision of a locket having carrying
frames for mounting pictures therein with
the frames held in position by rolling of
the parts so that one extends over the
other.

"Another object of the invention is the
provision of an arrangement by which four
different pictures may be mounted in a
locket instead of two which are usually
provided for.

"Another object of the invention is the
provision of an arrangement so that there
is a nesting of the parts when in folded po-
sition that the device may have a minimum
thickness."

There are four claims in the patent but
the plaintiff bases its action on claims 2
and 3. The claims in issue are as follows:

"2. In a locket, a pair of members, a hinge for connecting said members together, a frame in each member having a raised center portion and an outwardly extending edge in a single plane back of the center portion, and an inturned lip on each member extending over the said outwardly extending edge of said frame and also back of said raised center portion to mount the frame in position in the member without the use of solder.

"3. In a locket, a pair of rectangular members, a hinge for connecting said members together, a rectangular frame in each member having a raised center portion and an outwardly extending edge on three sides in a single plane back of the center portion, the fourth side edge being positioned beneath said hinge, and an inturned lip on each member extending over the said outwardly extending edge of said frame and also back of said raised center portion to mount the frame in position in the member without the use of solder."

The patent involves the mechanical construction of a locket, which is usually worn as an article of jewelry on a chain about the neck of the wearer. The plaintiff put its merchandise upon the market at least as early as June, 1937, and the defendant's article, which is accused of infringing, appeared on the market about April, 1938. The plaintiff found a ready market for its type of locket and it became one of its best sellers. It sold over 72,000 of this locket. The defendant sold a large quantity of its type.

The manufacture of lockets both by the plaintiff and the defendant at the time stated came about through the demand for lockets which had been in vogue years before and had lost most of their popularity by the year 1915. To meet the new call in the jewelry trade for lockets, quickly and economically, both parties sought to get away from the costly hand soldering and employed the rolled edge or press operation without the use of solder.

The question deals with the construction and function and not with the ornamental appearance and design of the article produced under the patent.

The locket of the patent in suit is made in the style of a book and placed upon the market in two forms, a four picture locket and a two picture locket. The two picture locket is not illustrated in the patent. It is the only locket involved in this suit. It is the same as the four picture locket except that it omits the center leaf and omits the recess in the frame or field piece to receive this center leaf. In each physical specimen as shown in plaintiff's exhibit 4 and defendant's exhibit B, there are back and front parts, which are the outer shell. These are identical and are hinged together. Also there are inner members known as field pieces or frames, which are in both male and female forms and which have raised front portions, and a rearwardly extending edge. This edge is located in substantially a single plane. If the field piece were laid upon a flat surface this edge would contact with the surface on three sides of the field piece. The field piece or frame is placed in the case member and this edge, which is in this single plane, extends along the lip of the casing and the lip is rolled inwardly over the edge of the frame on three sides of the rectangular casing. The plaintiff maintains that the fourth side extends beneath the hinge joint or knuckle, and by so extending beneath the hinge joint or knuckle, this frame or field piece is held from rising along this side of the rectangular frame. The defendant denies that the fourth side extends beneath the joint or knuckle in its locket. And further, it denies the function to the fourth side as claimed by the plaintiff.

The plaintiff stresses that certain advantages are attained by the construction of the patent in suit, namely the rolling of parts together to avoid the use of solder in a book locket, the provision of a gold outer surface to withstand wear, the provision of a book effect, the provision of a rolled hinge on the covers, and the use of parts formed from sheet metal by press operation.

Also, it avers that the patent illustrates two hingedly related parts, each of which is made up of two pieces rolled together, with the inner piece raised, or lifted upwardly to provide a raised deck in each part, so that the two raised decks will contact, and with the edges extending away from this raised contacting deck and rolled into the outer cover, which rolling is quite a ways back from the raised deck, thereby giving a book appearance or cluster of leaves effect with the stiff outer

covering extending beyond the leaves to protect them.

When the patent was issued, there at once arose the presumption of validity. The defense of invalidity places upon the defendant the burden of sustaining his position by proof beyond a reasonable doubt. The defendant cites certain patents as illustrative of the prior art.

Beginning with the Foote patent, No. 46,788, dated 1865, and running through the Sadler patent, No. 982,221, dated 1911, the Whitehead patent, No. 1,077,025, dated 1913, the Reuter patent, No. 1,690,552, dated 1928, the Weindel patent, No. 2,042,146, dated 1936, British patent No. 7824 dated 1888, British patent No. 17,191 dated 1904, and the Foster vanity case, which was of public use, there is revealed the history of the manufacture and production of lockets, vanity cases, watch fobs, and the like. The Sadler patent was not cited by the patent office.

The review of the prior art shows that the rolling of the parts together to avoid the use of solder, the provision of a gold outer surface to withstand wear, the provision of a book effect, the provision of a rolled hinge on the cover, the use of parts formed from sheet metal stock by press operation, and field pieces with raised center portions, were all old and have been recognized and adopted in many articles coming within the field of metal cases.

Nowhere in the patent is the provision of a gold outer surface to withstand wear mentioned. The book appearance or cluster of leaves effect with the stiff outer cover extending beyond the leaves to protect them is not functional.

In the specification it is recited: "Frames are provided for mounting in each of the cover members and are of an embossed structure providing a recess with a raised marginal edge providing a panelling effect. The edge of this member may be tucked beneath the hinge eyes, while the bevelled marginal edge portion will be placed within the lip on the outer cover member and this lip will be rolled inwardy over this bevelled edge so as to firmly mount the frame in position."

It is clear from this recital that the patentee did not attribute any function to the tucking of the edge under the hinge in the two picture locket. In fact, the frame is held in position by the rolling of the cover member over the edge of the frame and field piece on three sides of the rectangular frame. The field piece is held down at both ends. The fourth side is tucked down beneath the hinge but the field piece is held in position by both ends and not the hinge. This tucking down performs no function in the two picture locket. If it has any utility it is only in the four picture locket, but the four picture locket is not in issue in this case. Further, such utility is not invention.

It is evident from a study of the prior art that there have been many methods of making various kinds of lockets. The plaintiff, in making its locket, has employed the different methods and features which had been used in various articles of jewelry other than book-shaped lockets. They were obvious to any person skilled in the art and the use of them by the plaintiff in the production of its locket did not amount to invention. In Smith v. Nichols, 88 U.S. 112, 21 Wall. 112, at page 119, 22 L.Ed. 566, the court says: "But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large."

Mr. Justice Matthews said in Hollister v. Benedict & B. Manufacturing Co., 113 U.S. 59, at page 72, 5 S.Ct. 717, at page 724, 28 L.Ed. 901: "The idea * * * which is all that remains to constitute the invention, seems to us not to spring from that intuitive faculty of the mind put forth in the search for new results or new methods, creating what had not before existed, or bringing to light what lay hidden from vision; but, on the other hand, to be the suggestion of that common experience which arose spontaneously, and by a necessity of human reasoning, in the minds of those who had become acquainted with the circumstances with which they had to deal."

588

Whatever commercial success the plaintiff's locket attained cannot be taken as a cure-all for its lack of invention. The plaintiff by its own testimony showed that this success was brought about by the demand of fashion.

The court in the case entitled McClain v. Ortmayer, 141 U.S. 419, at page 428, 12 S.Ct. 76, at page 79, 35 L.Ed. 800, held: "If the generality of sales were made the test of patentability, it would result that a person, by securing a patent upon some trifling variation from previously known methods, might, by energy in pushing sales or by superiority in finishing or decorating his goods, drive competitors out of the market, and secure a practical monopoly, without in fact having made the slightest contribution of value to the useful arts."

The facts recited in the stipulation which the parties hereto have entered into for the purposes of this case are adopted as findings of fact.

Further, the court finds that

The prior art shows that the rolling of parts together to avoid the use of solder, the provision of a gold outer surface to withstand wear, the provision of a book effect, the provision of a rolled hinge on the cover, the use of parts formed from sheet metal stock by press operations, and field pieces with raised center portions, were all old.

The use of a gold outer surface to withstand wear is nowhere mentioned in the patent.

The book appearance or cluster of leaves effect is not functional.

The frame or field piece is held in position by the rolling of the cover member over the edge of the frame or field piece on three sides of the rectangular frame. The tucking down beneath the hinge of the fourth side performs no function.

There is no invention in the plaintiff's patent.

A finding as to whether or not the field piece in defendant's exhibit B extends beneath the rolled in hinge is immaterial since there is no invention in the patent.

The defendant has sustained its defence of invalidity. The patent is invalid. The question of infringement is not considered.

The action is dismissed.