397 F.2d 784
 158 U.S.P.Q. 497
 The TAYLOR WINE COMPANY, Inc., Plaintiff-Cross Appellant,
v.
Ralph F. CELMER, Defendant-Cross Appellee.
ULTIMATE RESEARCH AND DEVELOPMENT CORP., Plaintiff-Appellant,
v.
The TAYLOR WINE COMPANY, Inc., Defendant-Appellee.
 Nos. 439, 440, Dockets 32127, 32128.
 United States Court of Appeals Second Circuit.
 Argued May 16, 1968.
Decided July 18, 1968.
 
 Hoffman Stone, Rochester, N.Y., for Celmer and Ultimate Research and Development Corp.
 William B. Mason, Arlington, Va. (Penrose L. Albright, Arlington, Va., and Poles, Tublin, Patestides & Stratakis and Melvin J. Tublin, New York City, on the brief), for Taylor Wine Co.
 Before MOORE, HAYS and FEINBERG, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 The Talyor Wine Company, alleging that Ralph F. Celmer accused it of infringing a patent belonging to Celmer, brought an action seeking a declaratory judgment that either the patent was invalid or not infringed by Taylor. Thereafter, Ultimate Research and Development Corp., Celmer's wholly owned corporation to which he had transferred the patent, instituted suit charging Taylor with infringement. The two actions were consolidated for trial. The district court decided that the patent was valid and not infringed. We reverse on the ground that the patent is invalid. 35 U.S.C. 103 (1964).
 
 
 2
 The patent in controversy claims a process of extracting juice from vegetative pulps. First, the vegetables or fruits are made fluid by crushing them and, if desired, by adding to them a peptic enzyme. Secondly, a pressing aid consisting of between .5% And 5% By weight 'alpha cellulose fibers substantially free from fines and predominately in the range of 1-10 mm. in length' is added. Finally, the mixture is pressed to separate the juice from the solids.
 
 
 3
 The first and last steps in this process concededly are old in the art. Novelty is claimed only in the addition of the cellulose pressing aid.[1] Although it is asserted that the process results in improved yields from a variety of vegetable pulps of juices containing a low amount of solids, its principal contribution is said to be in the grape juice industry. Prior to the development of cellulose pressing aids Concord grapes could not be pressed on modern mechanical continuous extractors because the slimy, gelatinous pectins which they contained caused clogging. When cellulose fibers are added to the grape pulp, they form a network of channels permitting passage of the juice and eliminating this problem.
 
 
 4
 Celmer was not the first to use cellulose as a pressing aid in extracting juice from vegetative pulps. If his invention is considered to be only the discovery that cellulose is useful as a pressing aid, then it is anticipated by the prior art. 35 U.S.C. 102 (1964).
 
 
 5
 Celmer claims to have made his discovery on September 30, 1951. The record clearly establishes that cellulose was known as and had been used as a pressing aid prior to this date. See 35 U.S.C. 102(a). The parties stipulated that William C. Ventsam, if called as a witness, would have testified that a firm he had managed had used paper pulp (which is made up of cellulose fibers) as a pressing aid in producing grape juice prior to 1945 and that its process had been witnessed by others, including representatives of another grape juice company, in 1947.
 
 
 6
 Celmer first applied for his patent on September 15, 1964. The evidence shows that the utility of cellulose as a pressing aid had been disclosed both in a patent and in a printed publication more than one year prior to the date of Celmer's application. See 35 U.S.C. 102(b). United States Patent No. 2,235,028, which issued to Leo and others on March 18, 1941, teaches the use of cellulose fibers as an aid in pressing fruits and berries so as to avoid clogging and to obtain a high yield of juice. And in May, 1950 a technical feasibility paper published by the United States Department of Agriculture disclosed that the addition of paper pulp improved the pressing characteristics of prunes.
 
 
 7
 In the light of these references the validity of the patent can be vindicated only if the specifications it contains as to the kind and amount of cellulose to be used-- between .5% And 5% By weight alpha cellulose fibers substantially free from fines and predominately in the range of 1-10 mm. in length-- sufficiently differentiate it from the prior art. But these specifications taken either singly or in combination are insufficient to create patentable novelty. In the first place, Celmer claims no new or unexpected results; he merely asserts that his formula is more effective as a pressing aid than the cellulose fiber pressing aids previously developed. Furthermore, each of his specifications is either anticipated, not useful, or obvious to one having ordinary skill in the art. 'Alpha' cellulose was used as a pressing aid prior to 1945 in the process described in the Ventsam stipulation. The testimony strongly suggests that the removal of fines-- a step which increases costs-- is unnecessary. Finally, the specifications as to the quantity and length of fibers which achieve the best results can be arrived at through the kind of routine experimentation which is within the competence of anyone having ordinary skill in the art. See Pullman, Inc. v. ACF Industries, Inc., 393 F.2d 83, 88-89 (2d Cir. Smith v. Nichols, 88 U.S. 112, 119, 21 Wall. 112, 22 L.Ed. 566 (1874).
 
 
 8
 Celmer asserts that his is the only process which is operative in continuous juice extraction machinery. Assuming arguendo that this is true, we think that it would be obvious to one skilled in the art that the substance which had solved the problem of clogging in other kinds of juice extraction processes-- cellulose fiber-- might well solve the same problem in continuous juice extractors. And, as we have pointed out, the particular formula Celmer devised for this purpose lacks patentable novelty.
 
 
 9
 The cause is remanded with directions to enter a judgment declaring United States Patent No. 3,083,104 invalid.
 
 
 
 [1]
 At times Celmer calls his patent a combination. We find the relationships between the steps of the process sufficiently obvious that the validity of the patent depends entirely upon the novelty of the second step standing alone