### SIDNEY BLUMENTHAL & CO., Inc., v. ROSSIE VELVET CO.
#### No. 220.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

E. Clarkson Seward and W. Saxton Seward, both of New York City, and David L. Daggett, of New Haven, Conn., for appellant.

Curtiss K. Thompson, of New Haven, Conn. (William S. Pritchard and H. H. Levin, both of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is a suit for infringement of patent No. 1,989,535 issued to the plaintiff, as assignee, on January 29, 1935, on the application of Frederick W. Stolzenberg filed December 12, 1932. It relates to an improvement in pile fabrics and more especially to the variety known as transparent velvet. The applicant said in his specifications:

"A pile fabric commonly known as transparent velvet has become very popular during the past few years largely because of its unique appearance and charm which arise from its somewhat sheer, transparent and clinging qualities. There has, however, been a general and substantial disadvantage in this material because of its delicacy and susceptibility to injury through ordinary wear and the action of the elements. Transparent velvet is very easily crushed, even by the weight of the wearer, especially when supplemented by the heat of the body and/or of the atmosphere; and it is very readily injured by any form of wetting. A cleaning process is also very apt to cause it to lose some of its valuable features.

"My improved fabric has the same sheer, transparent and clinging characteristics as transparent velvet but it firmly resists crushing or matting as well as the deleterious effect of moistening. The weight of the wearer will not injure it and it will automatically recover from a shower or the like. Furthermore, it may be cleaned without loss of its charming characteristics. Finally, it is durable and wear-resisting to a very high degree."

Like most cut pile fabrics, that of the patent is to be woven in the manner "according to which two grounds consisting of warp and weft threads are woven while the pile threads are interwoven and interlaced back and forth between the two

grounds. Thereafter the pile threads are cut intermediate the grounds to form two fabric materials with cut pile protruding therefrom." The pile threads are woven as warps in the manner of "the well known W-weave" and may "be composed of any suitable material, such, for instance, as silk, artificial silk, cotton, linen; and the pile threads may likewise consist of any desired material although, in this case, I prefer to use artificial silk of the acetate variety."

Having thus stated the materials usable in the customary way, Mr. Stolzenberg disclosed that the only change he proposed to make in the prior practice in the art lay in using pile threads more tightly twisted. He said: "The important characteristic of the invention consists in the fact that the pile threads, of whatever material they are composed, are twisted to an extent beyond the normal or usual twist of threads used in weaving pile fabrics and, more particularly, velvets. For instance, while it is customary to give such threads from four to seven twists or turns per inch, I prefer to use from forty to forty-five twists per inch." By the use of pile threads so twisted and by leaving them unbrushed and so untwisted he eliminated certain usual steps in manufacture which made for economy in that respect and by so doing said that his fabric was given "a resilient surface that is extremely attractive in appearance and free from all the defects hereinabove noted as being characteristic of transparent velvets." He also stated that "high or hard twisting of the pile threads serves to increase their diameter" and carried this feature into both of his claims. The defendant insists upon evidence to that effect that the statement is contrary to fact and urges both noninfringement because the diameter of its pile threads is said not to be increased by twisting and also that the claims are invalid for want of sufficient disclosure as to how such increased diameter can be obtained; as well as because they describe a product merely in terms of its use or function. Another defense, which was sustained below, is that of anticipation by the prior knowledge and use of Cheney Brothers, of Manchester, Conn., a well-known manufacturer of such material.

The patent has two claims which are both relied on in this suit. The first reads: "1. A velvet clothing fabric comprising a cut pile composed of highly twisted cellulose acetate artificial silk thread, the twist being so high as substantially to increase the normal diameter of the thread, and the material being of such character as to retain said high twist after cutting and under normal conditions of wear, exposure and moisture, whereby the fabric has great durability and compressive resistance and resiliency."

The second claim differs from the first only in being tied to artificial silk thread broadly of the acetate variety so highly twisted as substantially to increase its normal diameter; "said increased diameter being substantially greater than the diameter of the ground threads of the fabric * * *."

The dispute over the increase in diameter of the pile threads by twisting is based on the failure of the parties to attribute the same meaning to the word "diameter" in the context in which it is used. Twisting tends to shorten the length and crowd more material into each unit of length of the highly twised thread than the same unit had before. So the diameter of the material alone, disregarding air spaces between the strands, may be said to have been increased by the twisting. However, as the twisting does make the strands lie closer together, the twisting in fact decreases what may be called the apparent overall diameter of the low twisted thread. While the choice of words to describe the effect of high twisting was hardly happy we find it unnecessary, and so undesirable, to say more about this feature of the defense either as to validity or infringement or about the so-called functional language of the claims, as we agree upon the ground of invalidity upon which the decree below was based.

Upon evidence which justified the finding, the trial judge found as a fact that Cheney Brothers, already mentioned, received a sample of velvet from Paris in July, 1932, which they tested and "found to comprise a ground of natural silk and a cut pile of artificial silk of the acetate variety, highly twisted. They immediately laid out a project for the production of an approximation of such material in their mills in Manchester, Conn., and by August 5, 1932, had completed and dispatched to their New York office a sample of some thirty-five double yards, of which a cutting is in evidence as Exhibit D. This material consists of a base of natural silk with (1) a cut pile composed of (2) highly twisted artificial silk thread of the acetate variety (50 to 55 turns per inch), (3) said pile

threads having a substantially greater diameter than the ground threads of the fabric, and (4) of such character as to retain said high twist after cutting and under normal conditions of wear, exposure and moisture. The composition of the fabric just described, and the date of its production, is amply evidenced by contemporaneous record of the Cheney Brothers of undisputed authenticity. However, due to commercial reasons, the product was not put upon the market by Cheney Brothers until February, 1933, the season for the sale of velvets being in the summer." Though the exact number of twists per inch may be open to question, it is clear that the pile threads Cheney Brothers used were highly twisted and had the characteristics claimed by Stolzenberg for his pile threads.

And further the trial judge was justified on the evidence in reaching the conclusion he did "by inference from the proved fact that Cheney Brothers, being experienced manufacturers in this field, in making this product deliberately imitated the Paris samples, that the combination later disclosed by Stolzenberg was used by Cheney Brothers with full knowledge and appreciation of the qualities which it in fact possessed."

 That the invention of the patent in suit was in fact later as the judge found was not contradicted by anything unless some effect as evidence can be given certain interrogatories directed to the plaintiff by the defendant and answered by the plaintiff's vice president to the best of his knowledge, information, and belief. They were sealed, were not offered in evidence, and after both parties had rested the court suggested that they be opened. When this was done they were, at the further suggestion of the court, "filed and stamped as filed as part of the file." Up to this time the interrogatories seem to have been ignored by both parties. They had been "sealed, to be opened by the Court upon the filing by the defendant of any dates of public use upon which defendant will rely, or to be opened at the trial." The answers so given were that the conception and disclosure of the "broad invention of the said patent was in June, 1931," and its reduction to practice in July, 1931; the conception, disclosure, and reduction to practice of the "perfected form" were all in July, 1932. We need not consider what probative force such baldly stated conclusions, reached very likely upon no more than hearsay, might

have had if they had been offered and received in evidence for no such thing was attempted. Nor could they be treated as part of the pleadings. Sinclair Refining Co. v. Jenkins Petroleum Process Company, 289 U.S. 689, 696, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496. So there was nothing to carry the date of invention back of the filing date of the application, and the trial court correctly treated the knowledge and use of Cheney Brothers as prior and an anticipation making the patent invalid because it showed that Stolzenberg was not the first inventor. 35 U.S.C.A. § 31; Smith v. Nichols, 21 Wall.(88 U.S.) 112, 22 L.Ed. 566.

Affirmed.