## STANLEY WORKS v. ROCKWELL MFG. CO.

Civ. A. No. 7290.

United States District Court
W. D. Pennsylvania.

July 30, 1952.

See also, D.C., 10 F.R.D. 421.

William H. Parmelee and William G. Young (of Christy, Parmelee & Strick-

land), Pittsburgh, Pa., T. Clay Lindsey and John M. Prutzman (of Lindsey & Prutzman), Hartford, Conn., for plaintiff.

A. W. Henderson and Davis C. Burroughs, Jr. (of Moorhead & Knox), Pittsburgh, Pa., William A. Strauch and John D. Nies (of Strauch, Nolan & Diggins), Washington, D. C., for defendant.

MARSH, District Judge.

### Findings of Fact

1. This is an action for a declaratory judgment and arises from an actual controversy between the plaintiff and the defendant as to the validity and alleged infringement by the plaintiff of United States Letters Patent to H. E. Tautz, No. 2,069,-395, granted February 2, 1937 (on application Serial No. 45,933, filed October 21, 1935) to The Delta Manufacturing Company, a corporation of Wisconsin, as assignee of said Tautz.

2. Plaintiff, The Stanley Works, is a Connecticut corporation and has its principal place of business at New Britain, Connecticut. It manufactures the Stanley "Flud-Lite" grinder safety shield, hereinafter called the Stanley shield.

3. Defendant, Rockwell Manufacturing Company, is a corporation of the Commonwealth of Pennsylvania, and has a regular and established place of business at Pittsburgh, Pennsylvania. It manufactures the "Delta Twin-Lite" grinder safety shield, hereinafter called the Delta shield, under the Tautz patent.

4. The entire right, title and interest in United States Patent to Tautz No. 2,069,-395, under which the Delta shield is made, is in the defendant.

5. Claim 6 of said Tautz patent is the only claim in suit. Defendant admits that none of the other nine claims of said Tautz patent is infringed by the accused Stanley shield. Defendant withdrew its earlier charge of infringement of claim 7.

6. The patent in suit and claim 6 concern safety shields for grinders and the like, useful primarily in tool touch up and sharpening and for light grinding operations.

7. Claim 6 of the Tautz patent is as follows:

"6. A safety shield comprising a housing having a top wall and a skirt, said top wall having an opening, a transparent panel for said opening for viewing work therethrough, and means carried by said housing for directing light onto the work from regions adjacent the opposite sides of said panel and within said skirt."

8. The Delta shield covered by the Tautz patent has been manufactured, offered for sale and sold since 1935.

9. The plaintiff has manufactured, offered for sale and sold the alleged infringing Stanley shield since about 1941.

10. The Delta shield covered by the Tautz patent consists of a metal frame having a depending peripheral skirt, inwardly-disposed, depending partition members generally paralleling three sides of the depending skirt, a central opening closed by a transparent window or panel and lying within the confines of the depending partition members so as to provide peripheral recesses at the sides and back for receiving light bulbs and electric wiring. A pair of light bulbs are located in pockets at the sides of the shield out of the line of particles thrown off from the wheel. The top wall of the frame contains slots above the side compartments which constitute ventilating openings and between these slots and the bulbs are reflectors.

11. The accused Stanley shield consists of a frame or housing having a top wall, a reinforcing skirt along its side and front edges, and an opening in its top wall; a transparent panel in said opening, a reflector rearwardly of and extending along the rear edge of the panel, a central bulb mounting located centrally within the reflector, and two bulbs, the bulbs being carried by the sockets in the opposite ends of the mounting.

12. The accused Stanley device does not have light bulbs located in pockets at the opposite side edges of the transparent panel within the side skirt portions of the housing.

13. The Stanley shield apparently has "means * * * for directing light onto the work from regions adjacent the opposite sides of said panel and within said skirt" which, as an equivalent, may infringe if claim 6 of the Tautz patent is broadly construed, but would not infringe if said claim is limitedly construed, viz., two lights, a skirt and partitions forming pockets for the lights, at opposite sides of the panel.

14. The prior art patent to Kelleher, No. 1,633,412, granted June 21, 1927, shows an eye and face shield for grinding wheels having a frame provided with an opening for accommodating a transparent panel through which the wheel and the work may be observed, and a light positioned within a reflector mounted behind the rear edge of the transparent panel and below the plane thereof. Commercial shields, as exemplified by the Acme shield, in evidence, and constructed in accordance with the disclosure of the Kelleher patent, have been on the market since prior to 1935, the filing date of the Tautz patent, and are still being manufactured and sold. Demonstrations carried out at the trial convinced the court that while this demonstrated shield was awkward due to its large size and was less efficient than the Tautz shield, it nevertheless performs the useful functions of adequately lighting the exposed periphery of a grinding wheel and the sides thereof, and protects the face and eyes of the operator from flying particles.

15. Prior art shields admittedly advertised, manufactured and sold by the Surty Manufacturing Company, of Chicago, Illinois, starting at least as early as 1932, and exemplified by the Surty Commercial Shield, in evidence, embody a housing or frame provided with a peripheral skirt at its sides and front and an opening in its top wall, a transparent member or panel within the opening, a light located adjacent to and extending along the rear edge of the transparent panel and a baffle or depending flange or partition between the light and the rear edge of the panel partially preventing the direct rays emanating from a 40 watt bulb from striking the

underside of the panel. The Surty shields have been continuously manufactured and sold since 1932, and are still being manufactured and sold by the Surty Company. Demonstrations carried out at the trial convince the court that this shield is adequate for lighting the working portion of the periphery of the wheel but is less adequate in lighting the sides thereof. However, when the shield is moved slightly to one side or the other, illumination of the side is adequate. When a long filament light is used therein less lateral movement of the shield is required.[1] This shield adequately protects the eyes and face of the operator.

16. The effect of light on the periphery and sides of the wheel under the demonstrated Acme and Surty shields, which were adjustable laterally, as well as vertically, depended considerably on the position preferred by the operator, the position of the shield, the design of the grinder, and the design of spark guards affixed to the grinder,—the latter can be long, short, or curved out of the way of the light. The court finds that adequate illumination of the grinding wheel and its sides was given by these single light safety shields when adjusted to meet the needs and idiosyncracies of the operator.

17. Demonstration indicated that the Delta shield and the accused Stanley shield which utilize two electric bulbs provide a more efficient grinder safety shield than any of the single bulb safety shields disclosed by the prior art. This superiority is due to the better illumination provided on the periphery and sides of the wheel where the work is performed. The safety shields demonstrated, which utilize a single bulb, provided adequate light for grinding purposes, but the light was not as bright or intense as that provided by the two-bulb structures. Some of this deficiency was due to less wattage and inefficient reflectors in the single bulb structures.

18. Prior art patents for magnifying devices, such as patent to Jones, No. 1,952,073, of 1934, showing two lights in pockets for directing light onto the work from opposite sides of a transparent panel; patent to Lindsay, No. 1,960,114, of 1934, having multiple lamps spaced in an annular channel within a skirt and surrounding the panel by which means the light is directed onto the part to be viewed; British patent No. 249,521, and the corresponding Swiss patent, No. 125,035, issued to Schaaff, disclosing a rectangular housing with a skirt and bulbs within the skirt at the sides, top and bottom edges of the panel;—all embody the principle of non-glaring illumination by directing light from various sides of transparent panels.

19. Likewise, for some time prior to the patent in suit, two or more lights have been used in show cases, scales, mirrors, typewriters and the like, to effect nonglare lighting in areas to be viewed from different angles. See Petz Patent, No. 634,701, of 1899; Ward Patent, No. 1,120,773, of 1914; Crane Patent, No. 1,236,915, of 1917; Loveberg Patent, No. 1,409,114, of 1922; Meinecke Patent, No. 1,727,377, of 1929; Mitchell Patent, No. 565,011, of 1896.

20. The patent to Klorer, No. 1,175,274, of 1916, discloses a chip guard or eyeshield for lathes and recognizes that a device containing a magnifying lens may be employed as an eyeshield and that a plain glass may be substituted therefor in the panel.

21. The court is convinced by the evidence introduced in this case that viewing devices having a transparent window or panel in the form of a magnifying lens can be used, and have been advertised for use, as eyeshields or guards for grinding wheels, lathes and various machines where it is desirable to guard the face or eyes of the operator from flying particles or chips, and where magnification aids in attaining greater accuracy and precision. The demonstrations carried out at the trial with magnifying viewers, particularly the Stanley Magnifying Device No. 701, convinced the court that a clear, enlarged vision of the wheel and the work applied thereto may be had without noticeable

---

1. Apparently long filament single lights are impractical because of the vibration.

314

distortion in the working area when the lens is at varying distances from the wheel.

22. Claim 6 is invalid for lack of invention over the prior art. Each and every element and combination of elements cited in claim 6 was old in the prior art. The same principles of illumination as employed in the Delta shield and the accused Stanley shield were old in the prior art patents and commercial structures referred to in preceding findings herein (18 and 19).

23. Claim 6 calls for a mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that heretofore performed or produced by them.

24. The claimed invention so clearly lacks patentable novelty that the collateral considerations of commercial success and alleged filling of a longfelt want and other facts, are immaterial. We remark, however, that the evidence indicates that the Delta shield did not replace goggles; that the Delta shield was not introduced without advertising; and that, although the Delta shield was well accepted, the court is not convinced that its success was unusual.

### Comment

This action was contested in every particular to the fullest extent by skillful counsel. They have been most helpful to the court and if our findings and conclusions are not correct the fault can not be ascribed to them.

The court has concluded that claim 6 of the Tautz patent is invalid for lack of invention.

Plaintiff admittedly has a heavy burden to establish invalidity. Not only did the Patent Office issue the patent but a District Court and the Court of Appeals in the Seventh Circuit adjudged claims, 6, 7 and 8 of the patent to be valid and infringed: Delta Mfg. Co. v. E. L. Essley

Machinery Co., D.C.E.D.Wis.1944, 63 F. Supp. 930, affirmed 7 Cir., 1946, 153 F.2d 905 certiorari denied, 1946, 328 U.S. 867, 66 S.Ct. 1376, 90 L.E. 1637. Of course, we have the utmost respect for these well reasoned decisions but the evidence and demonstrations in the controversy here, in the light of the law as we understand it, have led us to a contrary conclusion.[2]

At pretrial, defendant advised that "from 1767 on, with the millions of mechanics who have been handling those shields, not one of them thought of putting two lights on opposite sides of a grinding wheel, so as to light both the work area field on the front of the wheel as well as on the sides of the wheel, with enough illumination * * *." We take it then that the invention, if any, lies in the two lights on opposite sides of the transparent panel resulting in a nonglare, efficient illumination of the work area.

This proposition was submitted to the Patent Office where it was urged that the two-light arrangement provided nonglare, shadowless illumination and that the means used to accomplish this result was patentable. The Patent Office emphatically did not agree.[3] The file wrapper discloses that the proposal was rejected several times for the principal reason that the Patent Office considered that the substitution of two lights for the one-light guard shown in the prior Kelleher patent was "only a matter of choice"[4] and not a matter of invention,—that it was *an obvious variation* of the Kelleher arrangement [emphasis added]."[5] In view of this conclusion Tautz cancelled his claims which asserted shadowless illumination of the work area.

This opinion of the Patent Office in effect presages this court's opinion in regard to validity. We are convinced from the evidence and the demonstrations that the two-light arrangement is a useful improve-

---

2. See Standard Brands, Inc., v. National Grain Yeast Corp., 3 Cir., 1939, 101 F. 2d 814, 816.

3. We agree with the Examiner for the Patent Office when he said: "Any illumination will produce shadows. Wheth-

er the illumination of the work is shadowless or not is determined by many factors outside of the machine recited in these claims." Exhibit 68, page 19.

4. Exhibit 68, page 16.

5. Exhibit 68, page 23.

ment but is not a patentable improvement. For a mechanic skilled in the art and familiar with the Acme one-light shield, constructed from the Kelleher patent, and the Surty one-light shield and, also, with the extensive use of nonglare illumination by multiple lights, the arrangement is not an invention. Undoubtedly, the two-light combination improved the lighting at the work area on the periphery and sides of a grinder wheel, but in accomplishing this Tautz merely incorporated the well known lighting principle of nonglare illumination into the old safety shield and improved its lighting efficiency.

■ In Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58, Mr. Justice Douglas said: "A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' * * *, even though the new result had not before been contemplated." On page 90 of 314 U.S., on page 40 of 62 S.Ct. he also said: "Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art."

■ It is established that "[t]he conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162; Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971. In our view the Tautz patent fails to meet this test. It represents a combination of old elements with no change in their respective functions and no other result than the sum of the results produced by each of the combined elements. As stated, the identical combination has been used in other fields prior to the Tautz patent and produced the same results, i. e., nonglare illumination. The combination is not new, phy-

sically, functionally, or in the result obtained.

■ The Supreme Court, in the Great Atlantic & Pacific Tea Co. case, supra, directs scrutiny of "combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Courts are to look for "unusual and surprising results." The improvement which lies in more intense lighting of a grinding wheel can hardly be hailed as inventive genius.

■ Nothing seems to have survived by way of novelty over the prior art upon which to predicate a finding of invention. If anything remains it could only be the novelty of the combination of old elements in safety shields specifically instead of transparent panels generally. Cf. Packwood v. Briggs & Stratton Corp., supra. The two lights in the Tautz patent illuminate the surfaces upon which they are directed just as lights have ever done; the shield protects the worker from injury as shields have done since the eighteenth century; the partitions prevent the direct glare of the lights from striking the eyes of the worker, as partitions have always done; the metal skirt reflects light, as metal has always done. None of these functions appears to be new or different. Although two lights had not been used on a safety shield prior to the Delta shield, multiple lights had been used to improve illumination long before the Tautz patent. Nothing appears to have been added to the "total stock of knowledge." Compare Smith v. Nichols, 1874, 21 Wall. 112, 88 U.S. 112, 22 L.Ed. 566; Cuno Engineering Corp. v. Automatic Devices Corp., supra. As Judge Hastie said in the Packwood case [195 F.2d 973]: "A discovery or devising must add something of significance, though not necessarily very much, to scientific knowledge if it is to take on the quality of invention * * *."

■ Defendant urges that the commercial success of the device is proof of the validity of the patent.. In the Great Atlantic & Pacific Tea Co. case, however, the Supreme Court held that "commercial

316

success without invention will not make patentability."

We have not overlooked plaintiff's argument that, if the claim is limitedly construed (see Finding of Fact 13), it is anticipated by the prior art patents to Jones, Lindsay, and the British and corresponding Swiss patents issued to Schaaff. (See Finding of Fact 18.) But since we have found the claim to be invalid from lack of invention, we do not believe it is necessary to discuss this question or arrive at a definitive conclusion in connection therewith.

## Conclusions of Law

1. This court has jurisdiction of the parties, and of this action for a declaratory judgment under the provisions of Section 2201, Title 28 U.S.C.A., and the Patent Laws of the United States.

2. Claim 6 of Tautz Patent No. 2,069,395 does not reveal an invention in view of the fact that the device merely unites prior knowledge and elements old in the prior art without changing their functions.

3. Plaintiff has, beyond a reasonable doubt and by clear and convincing proof, overcome the presumption in favor of the validity of claim 6 of the Tautz patent.

4. Plaintiff is entitled to a decree declaring that claim 6 of the Tautz Patent No. 2,069,395 is invalid and unenforceable.

5. Defendant is entitled to no relief on its counterclaim and judgment on the counterclaim will be entered in favor of plaintiff.